EDMUND RICE and others, Trustees, *vs.* ST. PAUL & PACIFIC
RAILROAD COMPANY and others.

## April 6, 1878.

**Mortgage—Mortgagee Cannot Recover Possession without Foreclosure.**—At
common law, after a mortgage became forfeited by non-payment of the
moneys secured thereby, the mortgagee was authorized to proceed
immediately to obtain possession of the mortgaged premises in an action
of ejectment. By our statute " a mortgage of real property is not to be
deemed a conveyance so as to enable the owner of the mortgage to
recover possession of the real property without a foreclosure." The
effect of this statute is to cut off the common law right to maintain an
action for the possession before foreclosure.

**Same—Charter of St. Paul & Pacific Railroad Company—Mortgagee Entitled to
Possession upon Default.**—By special provision of its charter the St. Paul
& Pacific Railroad Company is empowered to confer upon its mortgagees
the right of possession of mortgaged property upon the common law
conditions, or upon any other conditions that may be agreed upon and
expressed in the mortgage. The effect is that by these charter provis-
ions it is made competent for the company, by the terms of a mortgage
or trust deed, to confer upon its mortgagee or trustee a right to the pos-
session of mortgaged property upon default in the payment of money
secured thereby, and such a right as will entitle the mortgagee or trustee
to sustain an action under our practice in the nature of ejectment to
obtain possession if it is withheld.

**Same—Same—Same—Mortgagee in Possession Entitled to Collect Tolls, Rents
and Incomes.**—*Held*, that under the ninth and twenty-first articles of the
mortgage or trust deed involved in this action, in case of default in the
payment of interest, according to the tenor of the coupons annexed to
the bond, secured by said mortgage or trust deed, full power is ex-
pressly conferred upon the trustees to enter into and upon all and sin-
gular the premises by the mortgage or trust deed conveyed, or intended
so to be, and each and every part thereof, and to have, hold and use the
same, to operate and conduct the business of the company's railway, and
to collect and receive all tolls, freights, incomes, rents, issues and
profits of the same, and every part thereof. The result is that upon
default upon the part of the company, such as is alleged in this case as
one of the facts upon which the trustees or mortagees rest their right
to a foreclosure and to a receiver, the trustees are entitled to enter into
and take possession of the mortgaged property without legal proceed-
ings, if they are permitted so to do; and, if not so permitted, they are
authorized to obtain possession by resorting to an action under our Code

in the nature of an action of ejectment. Having acquired possession, whether with or without recourse to legal proceedings, the trustees are expressly authorized to collect and receive all tolls, freights, incomes, rents and issues of the same, and of every part thereof.

**Same—Same—Mortgagee not Entitled to have Receiver Appointed.**—This action is brought to foreclose the mortgage or trust deed aforesaid, made by said company to the plaintiffs as trustees. In aid of the foreclosure a receiver is prayed for. The prayer is that, pending this suit, the court forthwith appoint a receiver to take immediate possession, control and management of the line of railroad from St. Paul to Watab, and of all the appurtenances, rolling stock, lands and other property belonging or appertaining to said line of road, and covered by said mortgage of $1,200,000, and that full power and authority be given to him to hold, use, manage, control and operate the same, with the usual power of receiver in such cases. *Held,* that upon the foregoing facts the case is one in which the plaintiffs have a complete and adequate remedy at law in respect to the very matters on account of which the appointment of a receiver is sought, and that therefore the plaintiffs are not entitled to have such receiver appointed.

**Same—Same—Term "Receivers" in Mortgage Construed.**—The ninth article of the mortgage or trust deed authorizes the trustees, upon the company's default, to take possession of the mortgaged property, and to have, hold, and use the same, "operating by their superintendents, managers, receivers or servants, or other attorneys or agents." *Held,* that the "receivers" here mentioned are not technical receivers, to be appointed by a court, but the receivers of the trustees.

This was an appeal by plaintiffs from an order of the late court of common pleas for Ramsey county, *Hall,* J., presiding, denying an application for the appointment of a receiver, in an action brought for the foreclosure of a certain mortgage or deed of trust.

In denying this motion the court, among other things, said:

"I do not propose to enter into an elaborate statement of the facts, as disclosed by the voluminous affidavits read upon this motion, but will merely state the conclusions to which I have come, accompanied by a few observations bearing upon the subject.

"Probably the most important question presented and to be determined relates to the adequacy of the mortgage securities which it is sought to foreclose by this action. It is

v.24m—30

claimed by the counsel for the plaintiffs that the principle which should guide the court in judging of the sufficiency of such security is the relation between the amount of the yearly profits of the railroad, and the amount necessary to pay its operating and current expenses, and the interest upon its prior mortgage indebtedness; and that, if the former sum is not equal or superior to the latter, the security is necessarily inadequate. Some decisions in New York are adduced in support of such a rule, and one in which the court is reported to have said: 'I consider, however, the best criterion of the value of the property in the city of New York is its rental. We are not to be bound for what it would sell for. Its worth can best be known by the rent it commands from paying tenants. In this way we can get at the value of an investment.' *Shotwell* v. *Smith,* 3 Edwards Ch. 588. And it is argued that the general principle is applicable in estimating the value of railroad lines. But it is evident that no such rule can be applied immutably, under all circumstances, and in every section of the country. While the rental of a lot situate on Wall street, in the city of New York, might furnish a fair basis upon which to estimate its value, it by no means follows that the same can be said with equal truth of a lot situate on Wabasha street, in the city of St. Paul. So the elements which enter into the estimate of the value of property, situate in an eastern city of the size of St. Paul, but whose future prospects indicate none other than a gradual growth arising from natural causes, must, in the very nature of things, be different from those which affect the estimate of property situate in a city whose population and business has, in the past, doubled within the space of a few years, and may reasonably be expected very rapidly to increase in the future. And this court has, on numerous occasions, been called upon to point out to juries, in proceedings looking to the condemnation of private property for public purposes, the difference that existed in estimating the value of property situated in an old-established city, subject to but little change, and increasing,

if at all, in population and business, slowly and gradually, and the same character of property situated in a country which is new, and whose rural and urban population, whose productions and business, are from year to year increasing in a very large degree; and such juries have been instructed that, in so far as this prospective increase in business and population affected the present market value of property, such future prospects were to be by them taken into consideration in forming their estimate of the property. Yet these considerations, while they have a material bearing upon the market value of property, affect its yearly rental but to a very slight degree.

"In estimating the value of railroad property and railroad lines, views analagous to the foregoing may be urged with equal propriety. It can but be apparent that in judging of the value of a railroad line, extending from a frontier town into the wilderness, other and different matters must be considered than would naturally or probably arise in an estimate of the value of a security existing upon the Hudson River Railroad, running through numerous and populated cities, and ending in the chief commercial emporium of the continent. In the first place, without a liability to do great injustice, the court cannot close its eyes to the fact, of common knowledge, that this road, and so with every other western road, was not built to meet the necessities of a people already occupying the country, or for the convenience of settlers already located on its proposed line of route, but was extended in advance of settlement, for the purpose of promoting such settlement, and before the prairie had been broken, by taking to market future products, of which renumeration for the costs of construction must have necessarily, for the most part, been expected to come. It is matter of great doubt whether a single road in this state has not been compelled to pay the interest on its first issue of bonds by successive issues, or has, during the very first years of its existence, been able from its earnings to pay its operating and current expenses;

and if not, according to the principle invoked by the plaintiffs, such roads were at the time worse than valueless, though far-seeing business men had just invested millions in their construction. It seems to me, therefore, very apparent, that not only the yearly profits of the road, but also the character of the country through which the lines pass; its capacity for the production of the grain which must constitute the principal freight traffic of the road; the development of the country, and the rapidity of its settlement; the amount and character of the lands included in the mortgage, to what extent reliance may be had upon sums to be realized by sale of them; the condition of the road, its capacity and prospects for business—so far as either or any of these circumstances affect the present value of the road—must be taken into consideration in estimating the value of these securities.

"The plaintiffs have introduced no evidence whatever to show the inadequacy of the security, but claim that the defendants have supplied such deficiency, insomuch as by their own statement the profits appear to be insufficient to meet the accruing interest. But if the foregoing views are correct, such position is not well taken, and such inadequacy is not proved; but not relying upon what might be regarded as a technicality, I am free to say that from all the evidence I regard the security on either line as sufficient to pay off the indebtedness which is the subject of the present suit, and all prior lines."

*Geo. L. Otis, Gilman, Clough & Lane, Gilfillan & Williams,* and *Wm. H. Scott,* for appellants.

The question presented here is: Do the plaintiffs make out a case for the appointment of a receiver either under the rule prevailing in old equity practice, or under the more enlarged rule provided by statute? Gen. St. *c.* 66, § 189. On behalf of the plaintiffs we claim that we make out such a case upon three distinct grounds:

*First.* On the ground that the accruing rents, tolls, and incomes of the railroads are mortgaged to plaintiffs as part

of the security for the debt; that they have a right to a foreclosure upon all the property mortgaged; and that the only mode of effecting a foreclosure upon the accruing rents, tolls, and incomes is by taking and holding them through a receiver. Upon this ground it is manifest that the appointment of the receiver is a matter of right, and not in any manner within the discretion of the court, because the foreclosure itself is a matter of right. The cases all concede that, where the tolls and incomes are specifically pledged, the mortgagee is entitled to a receiver, (*Post* v. *Don*, 4 Edw. 415; *Quincy* v. *Cheeseman*, 4 Sandf. Ch. 405; *The Bank* v. *Odgensburgh*, 5 Paige, 38; *Harwell* v. *Ripley*, 10 Paige, 43; Kerr on Receivers, 48–50, 62–4; Redf. on Railw. 508,) and it must necessarily follow, where the mortgage also covers the road, that the right to enforce the mortgage against the incomes is as absolute as the right to enforce it against the road. To allow the mortgagor, under such circumstances, to receive and dispose of the incomes, after a suit had been instituted to foreclose on all the mortgaged property, would be in effect to deny a foreclosure, so far as the incomes were concerned. Nor would it make any difference that the property mortgaged was abundant security for the debt, because a court cannot refuse to foreclose a mortgage upon all the property covered by it, on the ground that part of the property may be sufficient. In such case the mortgagor has given the whole as security, and the mortgagee is therefore entitled to the whole as security, without regard to the value. Such value, indeed, is only considered when the mortgagee asks the court to give him a specific lien upon the rents and profits, when the mortgage itself does not.

*Second.* Again, the plaintiffs are entitled to a receiver on the ground that they establish an apparent right to the property which is the subject of the action and in the possession of the adverse party, and the property or its rents and profits are in danger of being lost or materially injured or impaired. Gen. St. *c.* 66, § 189, *subd.* 1. Upon this ground,

also, the appointment of the receiver is a matter of right, because it is a remedy given by the statute, and, like any other statutory remedy, the party is entitled to it on showing the facts which the statute requires. No one can doubt that a mortgagor may, by the terms of his mortgage, give to the mortgagee, as a part of his security, the right to the possession of the property, or a lien on its incomes, such as will entitle him to have them sequestered for the enforcement of the security. Railroad mortgages are usually of this character, both in this country and England, and the defendant was expressly authorized by the legislature to execute such mortgages. Laws 1857, ex. sess. c. 1, §§ 11, 21. The statutory provisions regulating the effect of ordinary mortgages, and the legal rights of the parties to such mortgages, derived from the mortgages alone, have, therefore, no application to this case.

*Third.* Finally the plaintiffs are entitled to a receiver upon the ground that the mortgage debtor is insolvent, and the mortgaged property inadequate security for the debt, interest and costs. Under the old equity practice the appointment of a receiver upon this last ground was discretionary with the court in which the suit was brought, and there was no appeal from the order. But under the statute the practice is changed, and an appeal now lies to this court. The matter comes before this court just as any other matter in which a party has a right of appeal; and it can be reviewed in this court upon the merits, and is as much within the discretion of this court as it was within the discretion of the court below. Moreover, this too is a statutory ground for the appointment of a receiver, and is governed by the statute and not by the former equity practice. The right to a receiver is absolute upon the facts specified in the statute, and not discretionary, and in refusing or granting the receiver upon this ground both the court below and the appellate court must be governed by the same rules of decision as in granting or refusing any other remedy.

It is not necessary to show that there was any fraud or spoliation of the property, (*State* v. *North. Cent. R. Co.* 18 Md. 193,) nor is it directly material that the insolvency of the debtor, or the insufficiency of the property, should be established.   Gen. St. *c.* 66, § 189, *subd.* 1.   Yet under some circumstances the property, rents and profits would be considered in more danger where the debtor was insolvent, and the property insufficient, than where they were not.

But in this case the insolvency of the company is not even disputed, and no sufficient evidence has been offered to show the value of the property to be such as will, at the end of these suits, suffice to pay the debts, interest and costs.  Now, in estimating the adequacy of the security, the rule is that "the court must be satisfied beyond all reasonable doubt that the mortgaged premises, upon a master's sale, will bring sufficient to satisfy the debt due upon the mortgage, with interest and costs,       *       *       *       *       *       *       * or a receiver of the rents and profits of the mortgaged premises will be granted."   *Ins. Co.* v. *Stebbins,* 8 Paige, 565, 567. It is for the court to determine whether, under this rule, the security is adequate, and in reaching a conclusion they will adopt as the criterion of value the annual rental which the property will command.   *Shotwell* v. *Smith,* 3 Edw. Ch. 588. It is the income to be derived from the property which would be the controlling consideration with a bidder in fixing the amount of his bid.

The court below, however, saw fit to reject this test of value, and without any other evidence as to what the value is, attributed to the property a value which the future may possibly give it; a mere speculative or prospective value, dependent for its realization on the future growth and development of the country in which the property lies.   This, it would seem, was an inadvertent abuse of judicial discretion, and violated the true criterion of value established by the courts.

*Bigelow, Flandrau & Clark,* for respondents.

The plaintiff's motion was addressed to the sound discretion

of the court in which it was made, and the action of that court will be reviewed on appeal only to determine whether there has been an abuse of such discretion. Kerr on Receivers, 3, n.; 139 n. 1; *Forrest* v. *Forrest,* 25 N. Y. 501, 520; *Tracy* v. *Bank,* 37 N. Y. 524; *Milwaukee R. Co.* v. *Soutter,* 2 Wall. 521; *Verplank* v. *Caines,* 1 John. Ch. 57; *Jenkins* v. *Jenkins,* 1 Paige, 243; *Asylum* v. *McCartee,* Hopkins Ch. 435; *Willis* v. *Corlies,* 2 Edw. 288; *Myrick* v. *Pierce,* 5 Minn. 47, (66;) *Fowler* v. *Atkinson,* Id. 399, (505;) S. C. 6 Minn. 578, (412;) *Irvine* v. *Meyers,* Id. 394, (558;) *Groff* v. *Ramsey,* 19 Minn. 62; *Beach* v. *Chamberlain,* 3 Wend. 366; *Packer* v. *French,* Hill & Denio, 103; *Russell* v. *Conn,* 20 N. Y. 81; 2 Redf. on Railw. (3d Ed.) 538, 539, n. 31. There was, however, no abuse of such discretion, for the plaintiffs made at most but a very weak *prima facie* case, and every material statement of such case, save perhaps the insolvency of the railroad companies, was completely overthrown by the affidavits of the defendants.

In this state the appointment of a receiver before judgment is only authorized when the applicant "establishes an apparent right to property which is the subject of the action, and which is in the possession of an adverse party, and the property, or its rents and profits, are in danger of being lost, or materially injured or impaired." Gen. St. *c.* 66, § 189. In no case was this remedy ever allowed before judgment, in a pending suit, unless the inadequacy of the security, and the insolvency of the debtor, were both established; or some other facts were proved affording good and substantial ground for apprehending danger to the property or its income, pending the suit, unless a receiver should be appointed. Kerr on Receivers, 8, 9, 36, n. 1, 62–4, 143–4; *Shotwell* v. *Smith,* 3 Edw. 588; *Blondheim* v. *Moore,* 11 Md. 364; *Asylum* v. *McCartee,* Hopkins' Ch. 435; *Willis* v. *Corlies,* 2 Edw. 288; *Post* v. *Don,* 4 Edw. 415; 2 Redf. on Railw. 538, 539, n. 30, 31; 2 Story Eq. Jur. § 829; *Ins. Co.* v. *Stebbins,* 8 Paige, 565; *Quincy* v. *Cheeseman,* 4 Sandf. Ch. 405; *Warner* v. *Gouverneur's*

*Ex'rs,* 1 Barb. 36.   Nor is the fact that the income of the defendant's road is covered by the plaintiffs' mortgage any reason why a receiver should be appointed before judgment, so long as the plaintiffs are amply secu¦ ᵉd without such appointment.   Gen. St. *c.* 66, § 189; Id. *c*▮5, § 11; Id. *c.* 81, § 39; Kerr on Receivers, 36, n. 1, 70–72; 2 Redf. on Railw. (3d Ed.) 546; 2 Bouv. Law Dic. 631, 658–9.   It was necessary that the plaintiffs should affirmatively establish the inadequacy of the mortgage security, since the court will make no presumption in the matter; this, however, they have failed to do.   Neither is the proper criterion of the value of these lines of road such as is contended for by the plaintiffs. See upon this point the opinion of the court below.

BERRY, J.*   The St. Paul & Pacific Railroad Company, a corporation created by the legislature of Minnesota, executed on the second day of June, 1862, to the plaintiffs Edmund Rice, Horace Thompson and Samuel J. Tilden, as trustees, a mortgage or deed of trust to secure an issue of the bonds of said company to the amount of $1,200,000.   This action is brought for the purpose of foreclosing said mortgage or deed of trust, and in aid of the foreclosure, and upon sundry allegations in the complaint, a receiver is prayed for.   The prayer is that "pending this suit the court forthwith appoint a receiver to take immediate possession, control and management of the * * line of railroad from St. Paul to Watab, and of all the appurtenances, rolling stock, lands and other property belonging or appertaining to said line of road, and covered by said * * * mortgage of $1,200,000, and that full

---

*EDMUND RICE and others *vs.* FIRST DIV. ST. P. & P. R. Co. and others. (April 6, 1878.)

BERRY, J.   This case presents substantially the same questions determined at this term in *Edmund Rice and others* v. *The St. P. & P. R. Co. and others.*

The order denying the plaintiffs' application for a receiver is affirmed for the reasons assigned in that case.

*Geo. L. Otis, Gilman, Clough & Lane, Gilfillan & Williams* and *Wm. H. Scott,* for appellants.

*Bigelow, Flandrau & Clark,* for respondents.

power and authority be given to him to hold, use, manage, control and operate the same, with the usual power of receiver in such cases."

The original charter of the company is found in chapter 1, Laws 1857, ext    session. By section 11 of that chapter the company is authorized to borrow money, and "to make, execute, and deliver all necessary writings, notes, bonds, mortgages, or other obligations or securities, in amount and kind as may be deemed expedient by said corporation, in consideration of any such loan, or in discharge of any liabilities which it may incur in the construction, repair, equipment, or operation of said road; and the powers of the said company for the purposes aforesaid, and for all purposes necessary for carrying out the object of said company, are hereby ratified and confirmed, and the contracts and official acts of said company declared binding in law and equity upon said company and upon all other parties to said contract." Section 21 provides that "the said company is hereby authorized and empowered, in its corporate capacity, to make, execute, issue, and deliver its bonds or obligations in any amount which the directors may deem necessary or expedient; * * and to secure the payment of all or any of said bonds the said company is hereby authorized and empowered, in its corporate capacity, to make, execute and deliver one or more mortgages or deeds of trust upon the whole or any part of its railroad or branches constructed or authorized to be constructed, and of the estate granted by the act, and any or all other of their estate—real, personal or mixed—in possession or expectancy; and said company is also hereby authorized and empowered, in and by such mortgage or deed of trust, to confer upon the trustee or mortgagee full and ample powers to enter into and upon, and to take possession of, have, use, and employ, or to sell or dispose of the whole or any part of said railroad and branches, and all corporate and other franchises, rights, and privileges of the said company; and in case of any such sale, to grant and convey to the party or parties acquiring title under any

such sale, and their associates, successors, and assigns, all and the same rights, privileges, grants, franchises, immunities, and advantages in and by such mortgage or deed of trust enumerated and conveyed, which belonged to and were enjoyed by the said company, as fully and absolutely in every respect as the said company, its stockholders, officers and agents might or could have done if such sale or foreclosure had not taken place."

At common law, after a mortgage became forfeited by non-payment of the moneys secured thereby, the mortgagee was autho·ized to proceed immediately to obtain possession of the mortgaged premises in an action of ejectment.    Tyler on Ejectment, 45, 169.    But by our statute "a mortgage of real property is not to be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property without a foreclosure."    The effect of this obviously is to cut off the common law right to maintain an action for the possession before foreclosure.    But, as suggested by the counsel for the plaintiffs, "by special law this company is empowered to confer upon the·mortgagee the right of possession upon the common law conditions, or upon any other conditions that may be agreed upon and expressed in the mortgage," so that by this special provision of its charter it is made competent for the company, by the terms of a mortgage or trust deed, to confer upon the mortgagee or trustee a right to the possession of the mortgaged property upon default in the payment of bonds secured thereby, and such a right as will entitle the mortgagee or trustee to sustain an action under our practice, in the nature of ejectment to obtain possession, if it is withheld.

We have next to look at the mortgage or trust deed, for the purpose of ascertaining whether the company has availed itself of the power thus conferred.    The ninth article of the mortgage or trust deed is as follows, viz : "In case default shall be made in the payment of any interest on any of the aforesaid bonds secured by this instrument, issued or to be

issued, according to the tenor of the coupons thereto annexed, or in any requirement to be done or kept by the party of the first part, and if such default shall continue for the period of six months, it shall be lawful for the said trustees, or the survivors or survivor of them or their or his successors, personally or by their or his attorneys or agents, to enter into and upon all and singular the premises hereby conveyed, or intended so to be, and each and every part thereof, and to have, hold and use the same, operating by their or his superintendents, managers, receivers or servants, or other attorneys or agents, the said railway, and conducting the business thereof, and making from time to time all repairs and replacements, and such useful alterations, additions and improvements thereto as may seem to them or him to be judicious, and to collect and receive all tolls, freights, incomes, rents, issues and profits of the same, and of every part thereof, and, after deducting the expenses of operating the said railway, and conducting its business, and of all the said repairs, replacements, alterations, additions and improvements, and all payments which may be made for taxes, assessments, charges or liens, prior to the lien of these presents, upon the said premises, or any part thereof, as well as a just compensation for their or his own services, to apply the moneys arising as aforesaid to the payment of interest in the order in which such interest shall have become due, or shall become due, ratably to the persons holding the coupons evidencing the right to such interest, and, after paying all interest which shall have become due, to apply the same to the satisfaction of the principal of the aforesaid bonds, which may be at any time unpaid, ratably and without discrimination or preference."

It will be seen that this article of the mortgage or trust deed, in case of default in the payment of interest, according to the tenor of the coupons annexed to the bonds, expressly confers upon the trustees full power to enter into and upon all and singular the premises by the mortgage or trust deed conveyed or intended so to be, and each and every part

thereof, and to have, hold, and use the same, to operate and conduct the business of the company's railway, and *"to collect and receive all tolls, freights, incomes, rents, issues and profits of the same and of every part thereof."* The result is that under this article of the mortgage or trust deed, upon a default upon the part of the company (the mortgagor) such as is alleged as one of the facts upon which the plaintiffs (the trustees) rest their right to maintain this action for a foreclosure and their claim of a receiver, the plaintiffs, the trustees, are entitled to enter into and take possession of the mortgaged property without legal proceedings, if they are permitted so to do, and if not so permitted, they are authorized to obtain possession by resorting to an action under our Code, in the nature of an action of ejectment. If any of the property, into possession of which they are thus authorized to enter, is not real estate, and, therefore, possession of it not attainable by an action in the nature of ejectment, there is no reason why possession may not be had by resorting to an action of claim and delivery. Having acquired possession of the mortgaged property, whether with or without recourse to legal proceedings, the trustees are expressly authorized *"to collect and receive all tolls, freights, incomes, rents, issues and profits of the same, and of every part thereof."* All this can be accomplished by proceedings at law. The case is then one in which the plaintiffs have a complete and adequate remedy at law in respect to the very matters on account of which they seek the appointment of a receiver, and, as the appointment of a receiver is an exercise of equitable jurisdiction—purely so in a case of this kind—the fact that the plaintiffs have this complete and adequate remedy at law is, in accordance with a familiar rule, a sufficient reason why a receiver should not be appointed. In the case at bar it is proper to add that the complaint does not allege that the trustees have attempted to obtain possession of the mortgaged property by entry or otherwise, nor that they have even demanded such possession. Neither, so far as we discover, is there anything in the affidavits, used upon the

hearing of the motion for a receiver, tending to show any such attempt or demand. From the foregoing considerations it follows, in our opinion, that the motion for a receiver was properly denied.

It remains, however, to consider some of the points made by the counsel for the plaintiffs in favor of a contrary conclusion, which would not appear to be substantially disposed of by what we have already said. It is argued that the trustees are entitled to a receiver because, by the ninth article of the mortgage or trust deed, it is provided that upon the company's default the trustees may enter into and upon all the premises conveyed or intended to be conveyed by the mortgage or trust deed, and each and every part thereof, and have, hold and use the same, "operating by their superintendents, managers, receivers or servants, or other attorneys or agents." The claim is that the receivers here mentioned are receivers appointed by a court, and that, therefore, express authority is given to the trustees to demand the appointment of such receiver as a contract right. Irrespective of the doubt whether it is competent for parties to prescribe the action of a court in any such way as this, it must be apparent upon a little reflection that the word "receivers," as used in the mortgage or trust deed, cannot have the signification contended for; for a receiver appointed by a court is the receiver and officer of the court, while the receiver contemplated in the mortgage or trust deed is the receiver of the trustees: *their* receiver, to use the precise language of the instrument, and in no sense a technical receiver to be appointed by a court.

The only other positions taken by plaintiffs' counsel, to which we deem it necessary particularily to advert further, are such as are taken with reference to the provisions of our statutes (Gen. St. c. 66, title 12,) in regard to receivers, and to the practice of courts of equity in appointing receivers. Irrespective of statutory authority as to all these positions, we remark generally that they do not, neither does the reasoning nor do the authorities by which they are sought to be sus-

tained, fairly tend to show any right to a receiver in the case at bar, in which the plaintiffs have an adequate and complete remedy in the premises at law, and without any necessity for calling upon a court of equity to appoint a receiver. If there was not this adequate and complete remedy at law the considerations urged by the plaintiffs' counsel would certainly possess great weight. But the object here sought by the appointment of a receiver is to lay hold of and preserve the very "tolls, freights, incomes, rents, issues and profits" which the plaintiffs are, by the terms of the company's charter, and of the mortgage or trust deed, authorized and empowered to lay hold of and preserve, by taking possession of the mortgaged premises without suit, if they are permitted so to do, and if not so permitted then by proceedings at law.

These considerations appear to us to dispose of the case, and to render it unnecessary for us to extend this opinion further. The order denying the plaintiffs' application for a receiver is affirmed.

Gilfillan, C. J., having been of counsel, did not sit in this case.