PINES v. EQUITABLE TRUST CO.

MORTGAGES—MORTGAGOR MAY GIVE MORTGAGEE POSSESSION REGARD-
LESS OF STATUTE.

    Although, by reason of Act No. 62, Laws of 1843 (3 Comp.
Laws 1929, § 14956), under mortgages executed prior to en-
actment of Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929,
§§ 13498, 13499), mortgagee was not entitled to possession
of mortgaged premises, or to rent, income, and profits there-
from until after foreclosure and expiration of equity of re-
demption, it is competent for mortgagor to give possession
to mortgagee pursuant to contract for purpose of preserving
property and applying rents and income to upkeep and pay-
ment of mortgage bonds; and whether mortgage was executed
prior to enactment of said Act No. 228, Pub. Acts 1925, is
immaterial, since neither of said statutes constitutes restraint
on alienation.

Appeal from Wayne; Lamb (Fred S.), J., presid-
ing. Submitted April 14, 1933. (Docket No. 136,
Calendar No. 37,201.) Decided June 5, 1933. Re-
hearing denied June 29, 1933.

Bill by Gustave Pines against Equitable Trust
Company, a Michigan corporation, successor trus-
tee, to enjoin interference with plaintiff's posses-
sion of mortgaged premises, for an accounting, and
for other relief. Bill dismissed. Plaintiff appeals.
Affirmed.

*David I. Hubar* (*Milton M. Maddin*, of counsel),
for plaintiff.

*G. Leslie Field* and *E. Reed Hunt*, for defendant.

POTTER, J. Plaintiff filed a bill against defendant for injunction against defendant interfering with plaintiff's possession of mortgaged premises, collecting rents and profits, and from interfering with plaintiff's full dominion, for accounting and for other relief. August 15, 1928, Samuel Rosenbloom, a single man, of the city of Detroit, was the owner of the lots involved in this suit upon which is located a building consisting of 32 apartments, 5 stores, a 60-car garage, and a roof garden. Rosenbloom, on that date, was desirous of issuing and selling first-mortgage-real-estate-gold-coupon bonds aggregating $165,000, to be secured by a trust mortgage covering the premises. He did so. These bonds were divided into two series, senior series bonds amounting to $140,000, and junior series bonds amounting to $25,000. Rosenbloom on the same day mortgaged the premises for $165,000 by trust mortgage to Guaranty Trust Company of Detroit, Michigan, to secure these bond issues. There also exists another mortgage against the premises in favor of the Briggs Commercial & Development Company, a Michigan corporation, in the principal amount of $20,000, which it is claimed has been reduced to $11,500. The premises in question were transferred to Della Knapp, and she entered into a contract with the Guaranty Trust Company as follows:

"This agreement, made and entered into this 29th day of September, 1930, between Della Knapp of the city of Detroit, Wayne county, Michigan, party of the first part, and Guaranty Trust Company of Detroit, a Michigan corporation of Detroit, Michigan, party of the second part:

"Witnesseth, that:

"Whereas, the said first party is the owner of certain land in the city of Detroit, Wayne county, Michigan, described as follows:

" 'Lots numbered 193, 194, 195, and 196, Lewis and Crofoot's subdivision No. 5 of north part of east half of quarter section 29, in 10,000-acre tract, Greenfield, town 1 south, range 11 east, according to the plat thereof as recorded in liber 27 of plats, page 70, Wayne county, Michigan, records.'

"Whereas, the said second party is named as trustee in a certain mortgage dated August 15, 1928, and recorded in liber 2194 of mortgages on page 76, Wayne county records, which said mortgage was given to secure bonds in the sum of $165,000; and

"Whereas, said first mortgage is now in default on account of nonpayment of certain sums due thereunder; and

"Whereas, it is the desire and intention of said first party to assign the rents, income and profits and to turn over the management and operation of said premises and deliver possession of said premises to the said second party upon the terms and conditions hereinafter set forth;

"Now, therefore, it is hereby agreed by and between the said parties as follows:

"1.   Said first party does hereby sell, assign, set over and transfer to said second party, all rents, profits, income and arrears of rents and income as may now be, or may hereafter become due and owing to the first party, her personal representatives or assigns, from the tenants, occupants, lessees, or assigns of any lease or leases of the above-described premises and/or any future lease or leases or agreements relating to the above premises on which rent or income may be due and payable.

"Said first party does hereby transfer possession of said premises to the second party and does constitute and appoint the said second party as her true and lawful attorney for her and in her name and stead, to lease, let, contract, rent, manage, operate, and control the above-described premises and each and every part thereof, to employ such agents,

attorneys, employees, servants, and other help as may be deemed proper, all upon such terms of rental or compensation and upon such conditions as may to said second party seem meet and proper; to ask, demand, sue for, recover, collect, and receive all such sums of moneys, debts, rents, dues, accounts, and demands whatsoever, now or hereafter due or owing to her for rental or other charges in and about said premises, and, to have, use, and take all lawful ways and means in her name, or otherwise, for the recovery thereof, by any and all lawful ways and means, suits or proceedings at law, or in equity, or otherwise, and to compromise and agree to compromise for the same, and acquittances or other sufficient discharges for the same, for it and in its stead and as its free act and deed, to make, execute, and deliver, giving and granting unto the said second party full power and authority to do and perform all and every act and thing whatsoever requisite or necessary to be done in and about the premises, as fully to all intents and purposes as said first party may do, or would do if personally present, hereby ratifying and confirming all that the second party shall lawfully do or cause to be done by virtue thereof.

"2.    In connection with the management of the premises above described, said second party is specifically authorized (by way of illustration and not by way of limitation).

"(a)    To continue if deemed necessary and advisable by second party insurance now in force covering said premises, to renew same upon its expiration, or to secure new policies and second party may also place such other further and additional insurance of any kind, manner, nature, or description as second (party) in its judgment may deem necessary and/or advisable for its protection in the premises, and to pay all premiums out of the proceeds of the rental thereof.

"(b)   To collect any and all rentals due from any of the leases (lessees), tenants, or occupants of said premises.

"(c)   To pay any and all taxes and assessments, extraordinary, as well as ordinary, that may be levied thereon.

"(d)   To pay water rates.

"(e)   To make all necessary repairs and alterations.

"(f)   To take all steps necessary to keep said premises in condition satisfactory to civic, State and county authorities, insurance companies, and similar organizations.

"(g)   To lease any portion of said premises (but not said premises in their entirety, it being understood that the right to lease said premises in their entirety is not conferred to said second party) upon such terms and conditions as it may see fit; provided, however, that any and all leases shall be signed and executed by said second party as agent for said first party.

"(h)   To cause such procedure as it may deem proper to be taken to the end that all rentals may be collected promptly and to the end that possession may be retaken in case of default on the part of the tenant.

"3.   Said second party shall on or before the fifteenth of each month during its agency hereunder furnish said first party with a statement of all disbursements and

"4.   For and in consideration of its services rendered from month to month in pursuance of this agreement, said second party shall receive from said first party, and the latter agrees to pay, each month, a sum equal to five per cent. of the gross income received from the operation of said premises. The said second party is hereby authorized to deduct and retain said compensation for its services hereunder monthly from the income derived from said premises.

"5. It is hereby distinctly understood and agreed that the said first party hereby agrees to indemnify and save harmless said second party from any and all liability of whatsoever nature which might or could be asserted against said second party because of any injury done to or by anyone, whether employee, tenant, occupant, guest, or the public, when in or about the said premises.

"6. It is further agreed that the net proceeds from the rentals of said building shall be distributed as follows:

"(a) In payment of compensation and charges of the second party as hereinbefore set forth;

"(b) In payment of all expenses in connection with the maintenance of said building; any moneys now due and payable, or which may hereafter become due and payable during the life of this agreement, or any of the bonds secured by the said first mortgage hereinbefore referred to, or due and payable by first party on account of any of the terms and conditions of said trust mortgage, including any taxes or special assessments levied against the premises described in said trust mortgage; the order in which the foregoing payments shall be made and the manner and time of making the same to be within the sole and uncontrolled discretion and judgment of the second party;

"(c) All of the net proceeds over and above the amounts necessary to make the payments provided for in sections (a) and (b) above, shall be retained by the second party in a sinking fund to be used to pay any sums of money which may accrue from time to time under said bonds and/or mortgage and/or this agreement.

"It is further distinctly understood and agreed that the agency hereby created is and shall continue irrevocable by said first party without the express written consent of said second party so long as there shall be any moneys due and payable on account of any of the terms, conditions, or agreements con-

tained in the trust mortgage hereinbefore described and/or the bonds secured thereby, whether or not said moneys may be now due and payable, or may hereafter during the life of this agreement become due and payable; and as long as any moneys may be due and payable to the second party on account of anything contained in this agreement, and/or during all such time or times as said first party may owe any moneys to said second party for advances made or agreed to be made to or on behalf of the operation of the premises hereinbefore described, and during all such times as there may be pending any litigation or unliquidated *bona fide* claims upon the part of anyone whomsoever against said premises arising out of doing or omission of either party hereto in the premises or involving any of the proceeds from said premises.

"It is further understood and agreed that the agency created by this agreement may be terminated except as herein otherwise provided, upon 20 days' prior written notice given by either party to the other.

"It is further understood and agreed that notwithstanding anything to the contrary herein contained the said second party may at any time on 20 days' written notice to the other party hereto terminate this agreement, and said notice shall be deemed to have been given when the same is inclosed in an envelope, with proper postage attached and addressed to the first party at her last-known address, and deposited in the United States post office department, or in a receptacle for mail under the control of the said post office department.

"This agreement shall be binding on the parties hereto, and their successors, assigns, heirs, and personal representatives.

"In witness whereof, the party of the first part has hereunto set her hand and seal and the party of the second part has caused this instrument to be signed

by its duly authorized officers and sealed with its corporate seal the day and year first above written.

"Della Knapp,

"Guaranty Trust Company of Detroit,

"By:

"Louis F. Dahling,

"Vice-President,

"By:

"Fred Van Zandt,

"Assistant Secretary.

"In the presence of:

"Thomas S. Thomson."

Under mortgages made prior to the enactment of Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929, §§ 13498, 13499), a mortgagee was not entitled to possession of the mortgaged premises, or to the rent, income, and profits therefrom, until after foreclosure and expiration of the equity of redemption, by reason of Act No. 62, Laws of 1843 (3 Comp. Laws 1929, § 14956). *Wagar* v. *Stone,* 36 Mich. 364; *Hazeltine* v. *Granger,* 44 Mich. 503. We have held that under a mortgage executed prior to the enactment of Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929, §§ 13498, 13499), it was competent for the mortgagor to give possession to the mortgagee, pursuant to a similar contract. *Reichert* v. *Guaranty Trust Co.,* 261 Mich. 315. Neither statute constitutes a restraint on alienation. We think the contract valid.

Decree of the trial court affirmed, with costs.

McDonald, C. J., and Clark, Sharpe, North, Fead, Wiest, and Butzel, JJ., concurred.