MUTUAL BENEFIT LIFE INS. CO. *v.* WETSMAN.

1. Mortgages—Default—Assignment of Rents—Chattel Mortgages—Deferment of Foreclosure—Contracts.

Agreement, entered into between mortgagors and mortgagee after default had occurred under mortgage which contained an acceleration clause, whereby former gave chattel mortgage on furniture in apartment building involved and an assignment of rents, inclusive of rents that might be collected during foreclosure and redemption should proceedings be instituted after date to which foreclosure was deferred *held*, supported by valid consideration in such deferment and in managing the property, no attempt being made to shorten period, or assign equity, of redemption, hence the ejectment statute has not been contravened (3 Comp. Laws 1929, § 14956).

2. Chattel Mortgages—Mortgages—Consideration.

Chattel mortgage on furniture in 30-apartment building, given after default by mortgagor, under mortgage containing an acceleration clause, *held*, supported by valid consideration by mortgagee's deferment of foreclosure pursuant to his oral agreement to do so and in taking over management of the property.

3. Mortgages—Assignment of Rents—Fraud—Burden of Proof.

In mortgage foreclosure proceedings, mortgagor has burden of establishing claimed fraud, in obtaining assignment of rents prior to, and during, foreclosure and redemption.

4. Same—Assignment of Rents—Fraud—Evidence.

Evidence *held*, insufficient to establish actionable fraud in action of mortgagee's agent in obtaining from mortgagor assignments of rents under mortgage on 30-apartment building where parties had dealt with each other for many years, mortgagor did not claim inability to read, assignments were set forth in clear terms and there was no breach of duty arising from a fiduciary relation between them.

5. Same—Foreclosure Sale—Minimum Upset Price.

Failure of trial court to fix minimum foreclosure sale price in chancery proceedings as permitted by Act No. 229, Pub. Acts 1933, amending 3 Comp. Laws 1929, § 14366, *held*, correct on evidence presented.

6. SAME—FORECLOSURE—MINIMUM UPSET PRICE—STATUTES.

> Statute providing for minimum upset price in chancery mortgage foreclosure sales *held*, permissive to trial judge, not mandatory (3 Comp. Laws 1929, § 14366, as amended by Act No. 229, Pub. Acts 1933).

7. APPEAL AND ERROR—MORTGAGE FORECLOSURE—DEFAULTED JUNIOR INCUMBRANCE HOLDER.

> Holder of junior incumbrance, alleged to appear of record, who was defaulted in circuit court in mortgage foreclosure proceedings *held*, to have no interest in this appeal.

Appeal from Wayne; Hunt (Ormond F.), J. Submitted June 11, 1936. (Docket No. 103, Calendar No. 39,040.) Decided October 5, 1936. Rehearing denied November 9, 1936.

Bill by Mutual Benefit Life Insurance Company, a New Jersey corporation, against Joseph Wetsman and wife and Bankers Securities Company, a Michigan corporation, to foreclose a real estate mortgage. Cross-bill by defendants Wetsman against plaintiff to set aside a chattel mortgage, for an injunction, accounting and other relief. Defendant Bankers Securities Company was defaulted. From decree, plaintiff appeals and defendants Wetsman cross-appeal. Modified and affirmed.

*Ben O. Shepherd,* for plaintiff.

*Seymour J. Frank,* for defendant Wetsman.

NORTH, C. J. Joseph Wetsman was the owner of a 30-apartment building in Detroit. On December 7, 1927, he and his wife, referred to herein as defendants and cross-appellants, executed and delivered a mortgage for $75,000 to the Mutual Benefit Life Insurance Company. The mortgage and mortgage notes provided for semi-annual payments, beginning

with July 1, 1929, in the amount of $2,000 each, and for payment in full January 1, 1933. The final payment was evidenced by a note in the amount of $61,000. An acceleration clause in the mortgage provided that at the mortgagee's option the mortgage debt would become due and payable in case of default in payments as specified or breach of covenant by the mortgagor. In October, 1930, the mortgagors had defaulted to the extent of $2,000 in interest, $4,000 in principal, and approximately $10,000 in taxes. In order to prevent threatened foreclosure Mr. Wetsman on October 28, 1930, executed to Richard G. Lambrecht, as agent for the Mutual Benefit Life Insurance Company, an assignment of the rents of the apartment building, and on the same date he also executed a chattel mortgage to the insurance company in the amount of $61,000 on the furniture in the apartment building as additional security for the $61,000 note due January 1, 1933. Thereafter Wetsman continued in possession and collected the rents; but each month he turned the proceeds over to Lambrecht for credit upon the principal and interest of the real estate mortgage. This arrangement continued to April 23, 1931, at which time Lambrecht took over and thereafter continued in the management of the property, including the collection of the rents. In the spring of 1932 Lambrecht advised Wetsman that if the mortgagee was to forbear foreclosure it would be necessary that a new assignment of the rents be made direct to the mortgagee. Such an assignment was executed by Mr. and Mrs. Wetsman on May 20, 1932. It provided that the rents and income of the property should be paid to the insurance company thereafter, and that the assignment should remain in full force and effect during foreclosure proceedings and the

period of redemption in the event foreclosure was subsequently instituted. By the terms of the assignment the net income was to be applied on the mortgage debt, insurance and taxes. In consideration of the mortgagor's making the assignment the mortgagee agreed not to institute foreclosure proceedings prior to June 1, 1934. The mortgagee continued to manage the property and collect the rents subsequent to taking the second assignment.

On July 6, 1934, the mortgagee filed the bill in the instant case for the foreclosure of the real estate mortgage. Defendants answered, filed a cross-bill and sought injunctive relief, cancellation of the above-mentioned chattel mortgage, and cancellation or at least reformation of the instrument whereby the mortgagors assigned to the mortgagee the rents and income of the mortgaged property, accounting, and general relief.

The trial court held that the assignment of rents executed by the mortgagors to the mortgagee in 1932 was invalid in so far as it purported to vest in the mortgagee the right to possession and the rents and income of the mortgaged property during the period of redemption after the mortgage sale.

The sole question presented by plaintiff's appeal, as restated in the brief of defendants Wetsman, is:

"Does the 1843 ejectment statute (3 Comp. Laws 1929, § 14956) which prohibits the mortgagee from maintaining any action for recovery of the mortgaged premises until the period of redemption has expired, render unenforceable an assignment assigning to the mortgagee the rents on the mortgaged property which accrue during the period of redemption following the commissioner's sale under decree of foreclosure?"

The circuit judge, both in his opinion and in the decree entered, held that the statute did so prohibit the mortgagee. We think the holding was erroneous; and that in the absence of some special defense, such as fraud, duress, mistake, etc., such an agreement made under the circumstances of the instant case is valid and binding upon the parties and does not contravene the statute. This agreement was in no way contemplated as a part of the original mortgage contract. Instead it was a subsequent and wholly independent agreement for which there was a valid consideration in the mortgagee's agreement not to foreclose a defaulted mortgage, which agreement the mortgagee performed. The agreement to defer foreclosure in the first of the two rent assignments was oral; but in the second assignment the mortgagee's agreement to defer foreclosure of the defaulted mortgage for substantially two years was in writing.

Defendants Wetsman stress *McVicar* v. *Denison,* 81 Mich. 348, as a case wherein this court held, as it is construed in defendants' brief, "that the assignment of rents is not good or operative after the date of sale." This inference is drawn from the following extract from the court's opinion:

"The commencement of suit did not annul or terminate the right of complainants to have the rents collected and applied in payment of interest and taxes. The assignment continues in force until the *sale.*"

But it must be borne in mind that when the *McVicar* decision was rendered (June 6, 1890) the statute (2 How. § 6701; 1 Comp. Laws 1897, § 516) did not provide for the foreclosure sale until at least a full year for redemption had passed; but the foreclosure sale terminated the mortgagor's right to

redeem. Later, and by Act No. 200, Pub. Acts 1899, the legislature provided for a six months' period of redemption after the mortgage foreclosure sale. Because of this statutory change the inference defendants would draw from the *McVicar* decision is hardly justified.

It should be noted that the assignment which the defendants seek to evade in no way shortened the period within which the mortgagors might redeem the mortgaged property, nor did it attempt in any way to assign that right. Instead the assignment was of "all rents" for which the consideration in the assignment itself was "the forbearance from foreclosure as hereinafter provided." We are aware of the earlier Michigan decisions which tend strongly to hold that a mortgagor does not have the power to deprive himself by the terms of his mortgage of the income of the mortgaged premises any more than he has the power to deprive himself of the right of possession thereof prior to completed foreclosure. *Wagar* v. *Stone*, 36 Mich. 364; *Hazeltine* v. *Granger*, 44 Mich. 503. But such decisions involve the construction or application of the so-called ejectment statute in the light of public policy; and the more recent decisions of this court have taken a decidedly different trend.

"It has never been the policy of our law to divest the mortgagor of possession until foreclosure and the expiration of the period of redemption; and while we think it within the power of the parties to stipulate that such possession and management of the business may precede foreclosure, and that in such case a court of equity may enforce specifically such an engagement, as was held by the court below, and as we think is sustained by the authorities (*Shepley* v. *Railroad Co.*, 55 Me. 395; *Shaw* v. *Railroad Co.*, 5 Gray [71 Mass.] 162; *Sacramento &*

*Placerville R. Co.* v. *Superior Court of San Francisco,* 55 Cal. 453; *McLane* v. *Railroad Co.,* 66 Cal. 606 [6 Pac. 748] ; *Rice* v. *Railroad Co.,* 24 Minn. 464), yet such power should be exercised with a full recognition of the settled policy of this State, and should not be exercised except in a case where the right is clearly given by the engagement of the party." *Michigan Trust Co.* v. *Lansing Lumber Co.,* 103 Mich. 392.

In *Pines* v. *Equitable Trust Co.,* 263 Mich. 458, we said:

"Under mortgages made prior to the enactment of Act No. 228, Pub. Acts of 1925 (3 Comp. Laws 1929, §§ 13498, 13499), a mortgagee was not entitled to possession of the mortgaged premises, or to the rent, income, and profits therefrom, until after foreclosure and expiration of the equity of redemption, by reason of Act No. 62, Laws of 1843, (3 Comp. Laws of 1929, § 14956). *Wagar* v. *Stone,* 36 Mich. 364; *Hazeltine* v. *Granger,* 44 Mich. 503. We have held that under a mortgage executed prior to the enactment of Act No. 228, Pub. Acts 1925 (3 Comp. Laws 1929, §§ 13498, 13499), it was competent for the mortgagor to give possession to the mortgagee, pursuant to a similar contract. *Reichert* v. *Guaranty Trust Co.,* 261 Mich. 315. Neither statute constitutes a restraint on alienation. We think the contract valid."

In a later case we also said:

"In *Nusbaum* v. *Shapero,* 249 Mich. 252, the court said at pp. 263, 264:

" 'We do not believe the ejectment statute prevents a court of equity from enforcing provisions of the mortgage which insure the payment of taxes and insurance premiums. The failure to pay them out of the large revenue from the property might result in the destruction of the larger part of the security.' * * *

"In *Pines* v. *Equitable Trust Co.,* 263 Mich. 458, in which an assignment of rents was given after

default in payment under the terms of the mortgage, the court held that the acts of 1843 and 1925 did not constitute a restraint on alienation and that the contract for the assignment of rents was valid.

"In the instant case we find that there was a valid consideration for the assignment of rents. The defendants obtained an extension of the mortgage in consideration of their pledge of the rentals for the upkeep of the premises. Where supported by a valid consideration, such an assignment is valid." *Massachusetts Mutual Life Ins. Co.* v. *Ruetter,* 268 Mich. 175.

The trial judge was in error in holding the 1932 assignment of rents invalid on the ground that it contravened the provisions of the so-called ejectment statute.

Defendants Wetsman have perfected a cross-appeal; and present for review the questions hereinafter considered:

(1) "Was there legal consideration for the execution and delivery of the chattel mortgage, exhibit 4, and is it enforceable?"

Cross-appellants contend there was no consideration for the chattel mortgage given by them to the mortgagee on furnishings in the apartment building. The circuit judge held there was and that the chattel mortgage was, therefore, valid and binding. At the time this chattel mortgage was given payments due on the real estate mortgage were in default and hence plaintiff had the option of accelerating the maturity of the whole mortgage debt and instituting immediate foreclosure. The chattel mortgage and the first assignment of rents bear the same date and were given about one year and six months prior to the execution of the second assignment of rents. The second assignment, which as-

signed the rents direct to the mortgagee instead of its agent Lambrecht, contains the following:

"And the undersigned, Richard G. Lambrecht, for and in consideration of the sum of one dollar and other good and valuable consideration, receipt whereof is hereby acknowledged, join in this assignment for the purpose of assigning and transferring to the said the Mutual Benefit Life Insurance Company any interest in and to the rents hereinabove referred to, which he might have received by virtue of a rent assignment executed by Joseph Wetsman, dated October 28, 1930."

This later assignment was evidently taken in lieu of the earlier one. There was a valid consideration for the first assignment and for the chattel mortgage in the understanding and agreement, although not in writing, between the parties that the mortgagee would presently forego its right to foreclose. There was also consideration in that the mortgagee's agent assumed the management and control of the apartment property. This phase of the transaction was fully performed. The subsequent assignment had the same and a further consideration in that the mortgagee continued to manage the property and agreed in writing not to foreclose before June 1, 1934. This provision contained in the second assignment was also performed. That the mortgagor understood this fully, that he desired it, and his purpose in obtaining it are clearly disclosed by his testimony from which we quote:

"*Q.* Then you signed this rent assignment and the chattel mortgage on both these buildings for the same reason, didn't you, Mr. Wetsman, in order to prevent foreclosure?

"*A.* Yes, sir. * * * I didn't like to have foreclosure, and I tried to keep them from foreclosing.

I thought myself maybe the next year would be better, and I save my money and pay up my pieces of property, so I will have my money what I put in. I was figuring that if I could get a couple more years at that time, probably things would work out; everybody was figuring that. I don't remember whether I had any conversation about the chattel mortgage at the time I signed the second assignment of rents. * * *

"*Q.* What did you think you were signing it for if you wouldn't lose the furniture if it wasn't paid for?

"*A.* I signed it to protect my interest in the building.

"*Q.* To keep the company from foreclosing?

"*A.* No, I was figuring I would get my buildings back when times would be better and I could fix it up.

"*Q.* And you thought you would keep the company from foreclosing?

"*A.* That is the reason I gave them the assignment, the rent and the furniture, to protect my interest in the building."

We think it conclusively appears from this record that the subsequent agreements on the part of the mortgagor by which he assigned the rents and income were in no way contemplated as a part of the original mortgage obligation and that as above indicated there was a valid consideration for these instruments and also for the chattel mortgage. The circuit judge was correct in so holding as to the chattel mortgage, and that part of his decree must be affirmed.

(2) "Was the second assignment of rents, Exhibit 5, in its present form, obtained by fraud and is it therefore unenforceable even to the extent shown in the decree (*i. e.,* as to assignment of rents prior to foreclosure sale)?"

The burden was on defendants to establish the claimed fraud. They did not do so. This record does not contain proof which establishes false representations as to any fact, such as would constitute actionable fraud. Instead, for the most part it is cross-appellants' claim that a fiduciary relation existed between them and plaintiff's agent Lambrecht, and that he failed to inform Mr. Wetsman that the second assignment of rents differed in terms from the first. We quote from the Wetsman brief:

"We want to say with all the emphasis at our command that the second assignment of rents, in view of the facts and circumstances under which it was executed, when no discussion had been had as to the rents being obtainable by the insurance company after foreclosure proceedings, is as unconscionable a document as ever was prepared. And this court should have no hesitancy whatsoever in stating that fact and in holding the instrument void."

Mr. Wetsman testified he had great faith in Mr. Lambrecht, with whom he had had dealings for many years, and also that he (Wetsman) did not read the second assignment before signing it. However, this record discloses that Mr. Wetsman was experienced in real estate dealings. He obviously knew that in the matter involved in the instant case Lambrecht was acting for and in behalf of plaintiff. Wetsman does not claim inability to read. Each of the assignments was set forth in clear terms that Wetsman was fully able to understand. There was no breach of duty arising from a fiduciary relation between Wetsman and Lambrecht; and the circuit judge was right in finding there was no fraud committed in obtaining the second assignment of rents.

(3) "Was the trial court justified in disregarding the evidence respecting the value of the mortgaged premises and in not fixing a minimum foreclosure sale price permitted by Act No. 229, Pub. Acts 1933 (amending 3 Comp. Laws 1929, § 14366)?"

The cited statute reads:

"In any forfeiture, foreclosure or specific performance case in chancery based upon a mortgage or land contract the court *may* fix and determine the minimum price at which the real property covered by such mortgage or land contract may be sold at the sale under such forfeiture, foreclosure or specific performance proceedings."

Touching this phase of the case the circuit judge in his opinion said:

"The court has carefully examined the testimony which defendants claim ought to induce the court to fix a minimum price below which the mortgaged premises could not be sold. The court is not convinced that the testimony upon this point is sufficiently clear and convincing as to justify the court in naming such minimum price."

The trial judge concluded the testimony before him was not sufficient to justify him in attempting to fix a minimum price for sale on foreclosure. In such event his refusal to do so would clearly be correct. But in addition to this we think it clearly appears from the terms of the statute itself that the provision as to the trial judge decreeing an upset price is permissive and not mandatory.

The decree entered in the circuit court will be modified in accordance herewith. The cross-bill is dismissed and the relief therein sought is denied. Appellant will have costs. The defendant Bankers

Securities Company, alleged to appear of record to have a junior incumbrance, was defaulted in the circuit court and has no interest in this appeal.

FEAD, WIEST, BUTZEL, BUSHNELL, SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.