Sandra E. BEIKE, Appellant–Petitioner,

v.

Walter C. BEIKE, Appellee–Respondent.

No. 46A05–0311–CV–562.

Court of Appeals of Indiana.

April 12, 2004.

Craig V. Braje, Elizabeth A. Flynn, Michigan City, IN, Attorneys for Appellant.

Thomas J. Rutkowski, Michigan City, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Sandra Beike appeals the trial court's order granting Walter Beike's Motion for Relief from Judgment which adjusted the dissolution decree to account for a decline in value of Walter's pension benefits. We affirm.

### Issue

Sandra presents one issue for our review which we restate as whether the trial court abused its discretion in granting Walter's Motion for Relief from Judgment.

### Discussion and Decision

Walter and Sandra were married August 22, 1978, and on December 28, 1994, they separated. On June 6, 1996, the parties filed a Joint Motion for Partial Final Order which was approved by the trial court. The trial court entered a Partial Final Order on June 6, which stated in pertinent part:

> The Parties have agreed that [Sandra's] counsel will draft and process a QDRO reflecting that [Sandra] is entitled to Thirty–Six percent (36%) of the value of [Walter's] vested pension as of the date of their separation, which was December 28, 1994.

Appellant's Appendix at 44. At the time of the Partial Final Order, Walter was receiving $982.00 per month. Based on the calculation of thirty-six percent of the value of Walter's pension on December 28, 1994, Sandra was to receive $353.00 per month. On August 7, 1996, a Qualified Domestic Relations Order ("QDRO") was entered reflecting the distribution of Walter's retirement benefits.[1]

Walter was an employee at National Steel, which declared bankruptcy in March 2002. Subsequently, Walter received his pension benefits from Pension Benefit Guaranty Corporation ("PBGC"). However, the value of his pension plan was reduced from $1,918.77 to $1,195.29 or approximately sixty-two percent of the amount he had anticipated. On August 1, 2003, Walter filed a Motion for Relief from Order, requesting that the trial court modify the QDRO to reflect the change in circumstances brought about by National Steel's bankruptcy. The trial court held a

---

1. The QDRO was amended on October 15, 1996, but the division of Walter's pension plan remained the same.

hearing and took Walter's motion under advisement. On October 2, 2003, the trial court granted Walter's motion and reduced Sandra's monthly payment to $219.46. This appeal ensued.

### Discussion and Decision

#### I. Standard of Review

■ When reviewing a trial court's determination of whether to grant a motion for relief from judgment, we will not reweigh the evidence. *Zwiebel v. Zwiebel,* 689 N.E.2d 746, 748 (Ind.Ct.App.1997), *trans. denied.* We review a trial court's grant or denial of a motion for relief from judgment under an abuse of discretion standard of review. *Crafton v. Gibson,* 752 N.E.2d 78, 83 (Ind.Ct.App.2001). "An abuse of discretion occurs where the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief." *Weppler v. Stansbury,* 694 N.E.2d 1173, 1176 (Ind.Ct.App.1998).

#### II. Walter's Motion for Relief from Judgment

Sandra maintains that the trial court abused its discretion when it modified the decree. She argues that property settlement agreements incorporated into final dissolution decrees are binding contracts and cannot be modified. For this proposition, she directs our attention to *Dusenberry v. Dusenberry,* 625 N.E.2d 458 (Ind.Ct. App.1993). In that case, the Dusenberrys, while still married, were involved in an automobile accident in which they were both injured. They filed suit seeking damages for their injuries. Five months later, Carolyn Dusenberry filed a petition for dissolution of marriage. The trial court approved an agreed decree of marriage dissolution in which they stated that they would each receive one half of any proceeds from their personal injury claims after the payment of all medical and legal

bills. However, after the dissolution, Carolyn's condition worsened. After the personal injury suit was settled, Carolyn filed a Rule 60(B) motion to modify or rescind that part of the decree concerning division of the personal injury settlement. The trial court granted Carolyn's motion.

Upon appeal, this court first noted that a strong policy favors the finality of marital property division whether the trial court makes the division or approves a division by the parties. However, the court also noted that the trial court could grant Rule 60(B) motions to modify the property settlement. Therefore, the court considered Carolyn's arguments. Carolyn argued that the trial court lacked jurisdiction over the personal injury claim and therefore, that the division of the personal injury settlement was void. We held that Carolyn had failed to show either a lack of either personal or subject matter jurisdiction and therefore, we stated that her argument regarding jurisdiction had failed. *Id.* at 462. Alternatively, she argued that the settlement was the product of mutual mistake. However, the relief afforded under Rule 60(B)(1) due to a mutual mistake must be claimed within one year of the mistake and Carolyn had waited more than a year to file her petition to modify. She also argued that Rule 60(B)(8) afforded her a reasonable time in which to bring her claim of mutual mistake. However, this court noted that Rule 60(B)(8) specifically noted that the reasonable time allowance was not applicable to any of the reasons set forth in Rule 60(B)(1)-(4). Therefore, we held that Carolyn's argument on mutual mistake failed because the time for such a claim had elapsed. *Id.*

Sandra relies on *Dusenberry* for the proposition that dissolution decrees are final and are not subject to modification. However, this court noted that a Rule

60(B) Motion for Relief from Judgment was an appropriate means with which to modify a property settlement. The *Dusenberry* court merely stated that Carolyn's arguments were not persuasive, not that such a motion could not be used to modify a property settlement. Therefore, Sandra's reliance on *Dusenberry* is misplaced.

Second, we note that the asset in question in *Dusenberry* was a personal injury award. Significantly, the *Dusenberry* court noted that, "As in most personal injury actions, the ultimate value of the suit was uncertain." *Id.* at 463. The court stated that the agreement was clear and that the Dusenberrys each bargained for one half of the proceeds. Here, however, the asset in question is a pension plan. Although the value of the pension plan was not completely settled, both parties believed they understood the value of the plan at the time of the dissolution decree. Subsequently, a change which neither party could have predicted affected the value of the plan. This is not the same situation as *Dusenberry* where each party contracted to receive fifty percent of whatever was awarded.

■ Sandra next cites *Myers v. Myers*, 560 N.E.2d 39 (Ind.1990), stating that our supreme court in that case refused to modify a property settlement that included a military pension. In *Myers*, the trial court approved a property settlement agreement written by the parties which allowed the wife to receive a portion of her husband's military pension. Our supreme court noted that divorcing couples are free to divide their property in any way and their agreement is interpreted as any other contract. Sandra specifically directs our attention to the following language: "It is well settled that a property settlement provision in a dissolution decree is final and is not subject to modification by the court regardless of changing circumstances of the parties." *Id.* at 44. However, this language is not the last word on the matter. Although the decree may be final, in the case of ambiguity, we must interpret the decree as we do any other contract.

Such a situation arose in *Niccum v. Niccum*, 734 N.E.2d 637 (Ind.Ct.App. 2000), in which we were presented with a dissolution decree which included a benefit plan and investment program. Less than a year after the initial QDRO was entered, the husband moved to modify it because he stated that the trial court intended only to award the wife a set amount and not to provide for any growth during the interim period between the valuation date and the settlement agreement approval date. We noted that ambiguity existed because the agreement did not express in clear terms whether the wife was entitled to growth and losses during the stated period. However, the agreement clearly said she was entitled to half of the plan and the investment program. Therefore, we held that the wife was entitled to the growth on her half during that period, stating: "absent express language stating otherwise, the settlement agreement of the parties implicitly contemplated both parties sharing all of the rewards and risks associated with an investment plan." *Id.* at 640.

Our court recently examined a similar issue in *Case v. Case*, 794 N.E.2d 514 (Ind.Ct.App.2003). In *Case*, the trial court awarded $40,398.48 of the husband's 401(k) plan to the husband and $50,000.00 to the wife. Approximately a month and a half after the dissolution decree was issued, the husband moved to modify the decree because the value of the 401(k) plan had diminished to $67,266.00. Therefore, he argued that it would be impossible to make the awards in the decree. The husband moved the court to modify the decree so that each party would receive their respec-

tive interests in the plan. The trial court granted the motion and modified the decree to say that the wife would receive 55.31% of the 401(k) plan whenever a QDRO was tendered and approved by the court. Significantly, the trial court noted that the decline in the plan was not caused by any action by the husband. *Id.* at 516.

Upon appeal, we noted that the trial court's decree allocated the value of the 401(k) plan to the husband and wife and therefore, the decree contemplated that both parties would share in the risks and rewards associated with the plan. Although the wife argued that the trial court intended to award her $50,000.00, this court observed that, if we were to give the wife the allocated award, the trial court's intentions toward the husband would be thwarted. Although the wife argued that there were no clear terms regarding growth or loss related to the plan, we stated that, absent express language stating otherwise, the decree implicitly contemplated that both parties would share in the risks and the rewards associated with the plan. Therefore, we affirmed the trial court's modification of the 401(k) plan. *Id.* at 519.

■■ Here, as in *Case*, Sandra has not alleged that the decline in the value of Walter's pension was caused by or contributed to by any of Walter's actions. Rather, the value of the pension plan declined due to National Steel's bankruptcy. Therefore, as in *Case*, absent express language to the contrary, the risks and losses associated with the pension plan should be borne by both parties as their respective interests were allocated by the trial court.

In response to *Case* and *Niccum*, Sandra contends that there is express language stating that she is not to share in the risks and rewards of Walter's pension plan. Paragraph 5(b) of the October 15, 1996, Amended QDRO states, in relation to the payments Walter was to make to Sandra: "This amount shall not include subsequent benefits accruals attributable to compensation increases and additional service credited after such date." Appellant's Appendix at 54. However, Sandra is misinterpreting this clause of the Amended QDRO. This language means merely that Sandra is not entitled to any benefits Walter receives for additional employment time after the date of separation. For example, if Walter continued to work at National Steel for another five years after he and Sandra separated and his pension was based on the number of years he worked for National Steel, Sandra would not receive any benefit from the years after their separation. This language does not mean that Sandra could not receive any benefit from an increase in the value of Walter's pension plan.

There is no express language in the QDRO or the Amended QDRO stating that the parties would not share in the risks and rewards associated with Walter's pension benefits. Therefore, the trial court did not abuse its discretion by interpreting the dissolution to reflect the decrease in Walter's pension plan.[2] *See Eyler v. Eyler*, 492 N.E.2d 1071, 1076 (Ind.1986) (holding that, by amending the distribution of assets, the trial court merely effected a property division consistent with the logic and effect of the evidence before the court).

---

**2.** We note that, had the Partial Final Order stated that Sandra was to receive $353.00 per month, the result of this case may have been different in that the amount would have been set. However, as Sandra was to receive a percentage of the pension plan, it was within the trial court's discretion to ensure that the percentages reflected the decrease in the value of Walter's pension plan.

*Conclusion*

The trial court did not abuse its discretion when it granted relief from the decree to ensure that both Sandra and Walter would bear the risks and the rewards of the pension plan. The judgment of the trial court is affirmed.

Affirmed.

SULLIVAN, J., and RATLIFF, Sr.J., concur.