**Jerry EHMAN, Appellant–Petitioner,**

v.

**Mary EHMAN, Appellee–Respondent.**

No. 48A02–1006–DR–691.

Court of Appeals of Indiana.

Feb. 7, 2011.

David W. Stone, IV, Anderson, IN, Attorney for Appellant.

Elizabeth Bashaw Bybee, Anderson, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Here, after a husband and wife divorced, the trial court issued a divorce decree awarding the wife a share of the husband's retirement account. After the decree was issued, the value of the account declined dramatically because of a drop in the value of General Motors stock. The wife waited for five months to submit a Qualified Domestic Relations Order (QDRO), and waited over a year to seek the trial court's assistance even after she learned that the account did not have adequate funds to satisfy the QDRO. The husband appealed after the trial court awarded the wife the full amount set forth in the original divorce decree rather than a recalculated share taking into account the decrease in value of the account. We reverse.

Appellant-petitioner Jerry Ehman appeals the trial court's order entering judgment against him in the amount of $31,322. Jerry argues that the trial court should recalculate the respective shares of his personal savings plan (PSP) to be awarded to Jerry and appellee-respondent Mary Ehman based on a current valuation of the PSP. Finding that Mary was in the best position to avoid the loss and that her failure to submit the QDRO and seek assistance from the trial court in a timely fashion contributed to the dramatic decline in the value of the PSP, we reverse and remand with instructions set forth herein.

## FACTS [1]

Jerry and Mary were married in 1987. No children were born of the marriage. In January 2007, Jerry filed a petition for dissolution of marriage. In documents Jerry filed with the trial court, he disclosed that, among other assets, he had a PSP through General Motors worth

---

1. We heard oral argument in this case on January 12, 2011, in Indianapolis.

$34,292.00. Appellant's App. p. 10. That figure included a 401(k) savings plan from Guide Corporation, Jerry's employer.

On September 5, 2007, the trial court issued a divorce decree. In the divorce decree, the trial court stated, "Mary shall receive a QDRO [Qualified Domestic Relations Order] for thirty one thousand three hundred twenty two dollars ($31,322) from Jerry's personal savings plans." Appellant's App. p. 58. Jerry would receive the remainder of the PSP. Jerry also kept his pension, which had a value of $164,657. The divorce decree did not state which party was responsible for tendering the QDRO to the court. The divorce decree also awarded the marital residence and all equity in the residence to Jerry, subject to Jerry holding Mary harmless on the mortgage, and provided that "[a]ny money owed Mary shall become a lien on the real estate." Appellant's App. p. 57. Neither party appealed the divorce decree or sought to correct any errors in the divorce decree.

After the trial court issued its divorce decree, the value of Jerry's PSP declined because of a drop in the value of General Motors' stock. On February 19, 2008, Mary submitted a QDRO to the trial court, and it issued the QDRO that same day. The QDRO stated that Mary's interest in the PSP was $31,322. Jerry did not object to the QDRO. Subsequently, Mary submitted the QDRO to the company that managed Jerry's PSP, and the company stated that there were insufficient funds to comply with the QDRO.

Meanwhile, Guide Corporation, which had funded the 401(k) portion of the PSP, had closed the plant where Jerry worked. The exact date of closure is not in the record. In approximately March 2009, Guide sent Jerry a check for $3,800 as a payout for the 401(k). Jerry did not disclose to Mary his receipt of the payout.

On December 15, 2009, Mary filed what amounted to a motion to enforce the divorce decree, seeking assistance in obtaining the PSP funds from Jerry. Mary asserted in her request that as of May 2008, the PSP had a value of $20,432.

On May 10, 2010, Mary filed a motion for entry of judgment. Following a hearing on May 24, 2010, the trial court granted the motion and entered judgment against Jerry in the amount of $31,322. Jerry now appeals.

## DISCUSSION AND DECISION

■ Jerry appeals from the trial court's subsequent adjustment of the parties' assets. Specifically, Jerry contends that the trial court should have recalculated the value of the parties' shares of the PSP because he and Mary shared the risk that the PSP would decline in value after the trial court issued the decree.[2] He further contends that Mary failed to prepare the QDRO in a timely manner, and for these reasons, she is not entitled to a judgment in the amount of her share of the PSP as set forth in the divorce decree. In response, Mary notes that the divorce decree did not require her to prepare the QDRO, and that Jerry had superior knowledge regarding his PSP. Thus, Mary reasons, Jerry should have prepared the QDRO.

■ When a divorce decree does specify which party must prepare a QDRO, the risk of loss caused by a delay in the issuance of the QDRO should be borne by the party best situated to avoid the risk. *See Rogers v. Rogers*, 919 So.2d 184, 188 (Miss. Ct.App.2005) (determining that Wife had not prepared a QDRO to obtain her share

2. Jerry also argues that Mary's request to the trial court for assistance in obtaining her share of the PSP was barred by laches. Because this Court resolves this dispute based on Jerry's first argument, we need not address his argument based on laches.

of Husband's 401(k) plan, that the plan had decreased in value since the issuance of the divorce decree, and that Husband should not be penalized for Wife's delay by giving Wife a disproportionate share of the plan); *Kirsop v. Pub. Sch. Employees' Retirement Bd.*, 747 A.2d 966, 970–71 (Pa. Commw.Ct.2000) (noting that Wife had failed to protect her interest in her ex-husband's retirement account because she did not prepare a QDRO).

In this case, Mary was best situated to avoid the risk of loss to the PSP. Indeed, if Mary had submitted the QDRO to the trial court in a more timely manner, the decline in the PSP's value would not have been as extreme. Likewise, even after Mary was informed that the PSP did not have adequate funds to satisfy the QDRO, she waited over a year to bring the matter to the trial court's attention. Despite Mary's delay, the trial court granted her a judgment for $31,322, which is the specific amount in the divorce decree. However, the PSP had significantly decreased in value since the issuance of the decree. Because Mary was best situated to avoid the loss, it is not unreasonable to require her to share in the PSP's decline in value.

Moreover, Mary received a windfall while Jerry was penalized. More particularly, in the divorce decree, Mary was awarded $31,322 from a PSP worth $34,292 at the time the decree was issued. By giving Mary $31,322 despite the reduction in the value of the PSP, Jerry's share in the marital estate is reduced while Mary's is increased. *See Case v. Case*, 794 N.E.2d 514, 518 (Ind.Ct.App.2003) (affirming the trial court's recalculation of the parties' shares of a 401(k) plan after a drop in the plan's value because disbursement of the plan pursuant to the original divorce decree would have resulted in a windfall to the wife and penalized the husband).

■ Nevertheless, Mary points out that the divorce decree provided that, "[a]ny money owed Wife shall become a lien on the marital real estate." Appellant's App. p. 57. Mary argues that this provision demonstrates that the trial court intended that Mary would take her share of the PSP, as valued in the divorce decree, without bearing any risk of loss to the PSP. We disagree. Absent express language stating otherwise, the risks and losses associated with a pension plan should be borne by both parties as their respective interests were allocated by the trial court. *Beike v. Beike*, 805 N.E.2d 1265, 1269 (Ind. Ct.App.2004). Here, the provision in the divorce decree to which Mary cites is not an express statement.

In short, we conclude that the trial court erred by awarding Mary a judgment for her share of the PSP as originally calculated in the divorce decree rather than recalculating her share to take into account the PSP's loss in value. *See Case*, 794 N.E.2d at 519; *Beike*, 805 N.E.2d at 1269. However, we note that Jerry received a $3800 payment from his employer for the 401(k) portion of his PSP. That payment is subject to the divorce decree's division of the PSP between the parties. Consequently, Mary is entitled to a share of Jerry's 401(k) payment.

For these reasons, we reverse the judgment of the trial court and remand with the following instructions. The trial court shall establish an updated valuation of the PSP and award Mary 31/34 of the PSP's updated value.[3] Furthermore, the trial court shall calculate a 31/34 share of the 401(k) payout that Jerry received from Guide and order Jerry to pay that share to

---

**3.** We anticipate that the trial court will, in this instance, direct Mary to file a proposed QDRO for her recalculated share of the PSP in a short period of time.

Mary. Mary's share of the PSP and her share of Jerry's 401(k) payment, taken together, shall not exceed $31,322, which was her share of the PSP as allocated in the divorce decree.

The judgment of the trial court is reversed and remanded with instructions.

MAY, J., and BRADFORD, J., concur.