## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 20 2019, 8:47 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dan J. May
Kokomo, Indiana

ATTORNEY FOR APPELLEE

Kendra G. Gjerdingen
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John Lind,

*Appellant-Petitioner,*

v.

Nancy (Lind) Mullen,

*Appellee-Respondent*

February 20, 2019

Court of Appeals Case No.
18A-DR-1375

Appeal from the Howard Superior Court

The Honorable Brant J. Parry, Judge

Trial Court Cause No.
34D02-1205-DR-493

**Altice, Judge.**

## Case Summary

[1]     John Lind appeals from the trial court's judgment in favor of Nancy (Lind) Mullen to enforce an award of retirement benefits in the amount of $56,626.58.

John presents two issues for our review, which we consolidate and restate as: Did the trial court err in entering judgment in favor of Nancy?

We affirm.

## Facts & Procedural History

The parties' thirty-year marriage was dissolved on June 28, 2013. In the dissolution decree, the trial court equally divided the marital estate. To that end, the court divided John's Direct TV retirement savings plan (the Plan) as follows:

> The value of the Plan at separation was $203,006.55. In order to effectuate an even distribution of the marital assets, this plan is divided as follows: [John] is awarded $28,006.55 of this account as his sole and separate property. [Nancy] is awarded $175,000.00 of this account as her sole and separate property. Counsel for [John] shall prepare a Qualified Domestic Relations Order (QDRO).[1]

*Appellant's Appendix Vol. II* at 27.[2] John's attorney prepared the QDRO for the Plan (the Original QDRO), which was approved and signed by the trial court, but did not specify therein that the valuation date was April 24, 2012 (the date

---

[1] A QDRO has been characterized as any order made pursuant to a state domestic relations law which "creates or recognizes the existence of an alternative payee's right" to pension benefits. *Hogle v. Hogle*, 732 N.E.2d 1278, 1280 n.3 (emphasis omitted) (quoting *Ablamis v. Roper*, 937 F.2d 1450, 1454 (9th Cir. 1991)).

[2] In total, there were three retirement/pension plans that were divided as part of the marital estate. The other two plans were divided on a percentage basis with each party receiving fifty percent.

of separation).[3] As a result, the date of the dissolution decree was used by the Plan in determining the amount to distribute to Nancy. On November 7, 2013, the Plan, pursuant to the Original QDRO, distributed to Nancy the sum of $180,265.81.[4]

[4] On April 22, 2016, Nancy filed a motion requesting an amended QDRO. Nancy maintained that she did not receive the full portion of her award as intended to effectuate an equal distribution because she received gains on her award from June 28, 2013, rather than April 24, 2012. The trial court held a hearing on Nancy's motion. During the hearing, Nancy directed the court to *Beike v. Beike*, 805 N.E.2d 1265 (Ind. Ct. App. 2004), and argued that "[a]bsent express[] language stating otherwise the Decree implicitly contemplated that both parties would share in the risks and rewards associated with the plan." *Transcript Vol. II* at 8 (quoting *Beike*, 805 N.E.2d at 1269).

[5] In response, John argued that the dissolution decree was clear that Nancy was to receive a fixed dollar amount from the Plan and no gains thereon. He also argued that Nancy did not timely file a motion to correct error or Ind. Trial Rule 60(B) motion for relief from judgment, as was the procedural posture of

---

[3] John's counsel prepared QDROs for the other plans specifying the valuation date as April 24, 2012.

[4] The excess $5265.81 reflects the gains attributable to the $175,000 award from the date of dissolution (June 28, 2013) to the date of the payout from the Plan (November 7, 2013).

the case upon which Nancy relied. He stated that Nancy "knew about some potential issue and then sat on her hands for close to three years."[5] *Id.* at 6.

[6]     On July 14, 2016, the trial court issued an order granting Nancy's motion to amend the QDRO for the Plan (Amended QDRO). The Amended QDRO provided that Nancy was to receive her award of $175,000 plus an amount equal to the gains and losses attributable to that amount from April 24, 2012 to November 7, 2013. The Amended QDRO, like the Original QDRO, also provided:

> 15. **Reimbursement.** If benefits assigned to the Alternate Payee [i.e., Nancy] under this Order are wrongfully or mistakenly paid by the Plan to the Participant [i.e., John], the Participant shall promptly reimburse the Alternate Payee for such benefits by paying directly to the Alternate Payee an amount equal to the benefits wrongfully or mistakenly received, including gains and losses.[6]

*Appellant's Appendix Vol. II* at 72; *Appellee's Appendix Vol. II* at 10. John did not appeal the trial court's issuance of the Amended QDRO. The Amended QDRO was submitted to the Plan administrator in July 2016. On July 29, 2016, the Plan notified the parties that the Amended QDRO was denied

---

[5] John's counsel also stated, "If I was to file a formal answer Judge I would have probably asserted as affirmative defenses accord and satisfaction, estoppel[,] laches[,] payment. She's gotten her money. . . . [T]his ship has sailed long ago." *Transcript Vol. II* at 6.

[6] In the Original QDRO, this provision did not include the last clause "including gains and losses."

because it "grossly exceed[ed]" the funds in the Plan.[7] *Appellant's Appendix Vol. II at 78.*

[7] The next action taken by John in this case was on September 7, 2016, when John's counsel filed a motion for enlargement of time to respond to interrogatories[8] in conjunction with a motion for leave to withdraw appearance on John's behalf. On October 20, 2016, John filed a motion to strike, response and objection to interrogatories. Although initially granted, the trial court reconsidered its ruling in response to a motion filed by Nancy and ordered John to answer the interrogatories. On December 12, 2016, John filed a motion to correct error challenging the trial court's order that he respond to Nancy's discovery request. The trial court denied John's motion on January 4, 2017, and he took no further action.

[8] On September 19, 2017, Nancy filed a verified petition to enforce award of retirement benefits. After several continuances, the court held a hearing on this petition on April 5, 2018. At the hearing, the court was made aware that there were insufficient funds in the Plan to satisfy the Amended QDRO and that it had taken nearly a year to receive documents related to the Plan from which it could be determined how much Nancy was still owed. Nancy testified that she

---

[7] A statement for the Plan shows that as of March 31, 2015, the Plan had a balance of $746.69. John testified that he had lived off of the funds remaining in the Plan after the funds were distributed to Nancy pursuant to the Original QDRO.

[8] It is unclear when the interrogatories were served.

received information that the estimated net gain on her share of the Plan for the specified time period was $51,574.95. After subtracting the amount she had already received and adding in interest on the amount due, Nancy claimed she was owed $56,626.58 plus interest at a statutory rate from January 1, 2017 until paid in full.[9] On April 11, 2018, the trial court issued an order enforcing the judgment against John in this amount.

[9] On May 7, 2018, John filed a motion to correct error, arguing that Nancy never filed a motion for relief from judgment within one year of the dissolution decree and that the trial court impermissibly modified the dissolution decree when it issued the Amended QDRO in July 2016. John requested "an order correcting the trial court's error in the court's ruling of April 11, 2018 modifying the court's decree to grant Nancy a modified judgment of $56,626.58 in addition to her $175,000.00 already granted to her and received by her on November 7, 2013." *Appellant's Appendix Vol. II* at 96. The trial court denied John's motion to correct error on May 24, 2018. John now appeals.

## Discussion & Decision

[10] John argues that the trial court was not permitted to modify the marital property disposition absent a showing of fraud, which Nancy does not allege.[10]

---

[9] John does not challenge Nancy's calculation.

[10] At the hearing on her motion to amend the QDRO, Nancy stated that she believed the omission of the date of separation as the valuation date in the QDRO was "an honest error." *Transcript Vol. II* at 4.

He maintains that the dissolution decree was unambiguous in that Nancy was awarded a fixed sum of $175,000 from the Plan and was not entitled to gains. He also argues that Nancy did not properly or timely challenge the dissolution decree or the Original QDRO.

[11] We note that John presented these arguments to the trial court in opposing Nancy's motion for an amended QDRO in July 2016. The trial court even noted John's arguments in its order, but nevertheless granted Nancy's request for an amended QDRO. In this vein, the court found that, pursuant to the dissolution decree, Nancy was to receive the gains attributable to the $175,000 in the Plan awarded to her as part of the equal division of marital property and that she did not receive the full amount of such gains. John did not appeal the trial court's 2016 order or otherwise challenge the Amended QDRO. Indeed, John did not appeal until after the trial court's 2018 order denying his motion to correct error that he filed after the trial court granted Nancy's motion to enforce the court's award of retirement benefits.

[12] On appeal, John claims that the trial court's 2016 order was interlocutory and not a final appealable order. We disagree. First, John's argument is disingenuous in that in pleadings he filed after the trial court issued its order, John acknowledged that "[o]n July 14, 2016 the court entered a *final* order on the issuance of a QDRO." *Appellee's Appendix* at 17, 19 (emphasis supplied). He also asserted in his 2016 motion to correct error that this matter was "concluded and the file closed after no appeal of the July 14, 2016 final order was entered." *Id*. at 21. Second, we note that the trial court's order disposed of

all claims and issues as to all parties. *See* Ind. Appellate Rule 2(H)(1). The trial court's July 14, 2016 order was therefore a final, appealable order. Thus, regardless of whether there is any merit to John's arguments challenging the trial court's determination, the time to make those arguments was in 2016 after the trial court issued its order. John, however, took no action and did not timely pursue an appeal. He has therefore waived his right to challenge the trial court's 2016 determination that pursuant to the dissolution decree, Nancy is entitled to gains from the date of separation.

[13] We also note that in arguing against the trial court's issuance of the Amended QDRO, John misrepresents the procedural posture of this case. Before the court now is Nancy's motion to enforce the award of retirement benefits. Nancy filed this motion because she is unable to secure the amount to which the trial court found she was entitled pursuant to the dissolution decree due to the fact that there are insufficient funds in the Plan. Nancy's motion to enforce is essentially a motion for proceedings supplemental, which does not alter the trial court's determination nearly two years prior that she is entitled to the gains on that portion of the Plan awarded to her in the dissolution action. As stated above, John cannot now challenge the trial court's determination in this regard.

[14] Judgment affirmed.

Brown, J. and Tavitas, J., concur.