# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**CRAIG D. DOYLE**
**KURT V. LAKER**
Doyle Legal Corporation, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**SEAN M. CLAPP**
Clapp Ferrucci
Fishers, Indiana



FILED
May 10 2012, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| THOMAS A. NEU and ELIZABETH A. NEU, Husband and Wife, and WELLS FARGO BANK, N.A., | ) ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 49A02-1109-MF-842 |
| BRETT GIBSON, | ) ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David Dreyer, Judge
Cause No. 49D10-0506-MF-21457

**May 10, 2012**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellants-Defendants, Thomas A. Neu and Elizabeth A. Neu (collectively, the Neus) and Wells Fargo Bank, N.A. (Wells Fargo) (collectively, the Appellants), appeal the trial court's denial of their motion for relief from judgment and their request for attorney fees following Appellee-Plaintiff's, Brett Gibson (Gibson), full credit bid during a sheriff's sale of real property located in Michigan.

We reverse and remand for further proceedings consistent with this opinion.

## ISSUES

The Appellants present two issues on appeal, which we restate as:

(1) Whether the trial court abused its discretion by failing to declare Gibson's Indiana judgment fully satisfied and released when Gibson obtained a foreclosure judgment in Michigan based on the same promissory note that was the basis of his judgment in Indiana; and

(2) Whether the trial court erred when it denied Appellants' request for attorney fees because Gibson failed to disclose the foreclosure judgment obtained in Michigan at the subsequent sheriff's sale.

## FACTS AND PROCEDURAL HISTORY

On September 22, 2004, Gibson entered into a business transaction with John Nowak (Nowak). In exchange for the sale of Cellular Telephone Centers T.H., Inc. stock, Nowak gave Gibson a promissory note in the principal amount of $350,000. To secure repayment of the note, Nowak granted Gibson a second mortgage against his

2

residence located in Indianapolis, Indiana (the Indiana Real Estate) and against his vacation property in Oscoda County, Michigan (the Michigan Real Estate). At the time of the transaction, the Irwin Mortgage Corporation held a prior mortgage on the Indiana Real Estate, which secured a loan of $506,900.

On March 11, 2005, Nowak sold the Indiana Real Estate to the Neus for $600,000. He did not inform Gibson of the sale. As part of his closing with the Neus, Nowak signed a Vendor's Affidavit stating the Indiana Real Estate was free and clear of "every kind or description of lien, lease or encumbrance except" a "mortgage from [Nowak], a single man[,] to Irwin Mortgage Corporation[.]" *Neu v. Gibson*, 928 N.E.2d 556, 558 (Ind. 2010). Investors Titlecorp acted as the closing agent for the transaction and performed a title search on the Real Estate, which revealed the Irwin mortgage but not the Gibson mortgage. The Neus brought $395,391.06 to the closing and borrowed $200,000 from Washington Mutual Bank.

Nowak defaulted on the promissory note to Gibson.

## I. *Legal Proceedings in Indiana*

On June 3, 2005, Gibson filed a Complaint against Nowak, the Neus, and Washington Mutual Bank seeking foreclosure on the Indiana Real Estate, asking for $366,148.93 plus 6.5% interest, attorney fees and costs. On October 14, 2005, Nowak filed for bankruptcy. Gibson and the Neus filed competing motions for summary judgment. On July 21, 2006, the trial court granted the Neus' motion for summary judgment and required Gibson to release his mortgage on the Indiana Real Estate, finding Nowak had substantially complied with the promissory note's conditions. The trial court

3

also found that "though other findings dispose of this litigation between Gibson and the Neus and Washington Mutual," the Neus and Washington Mutual "would be entitled to assume the first lien position of Irwin Mortgage Corporation, in the amount of $506,016.34 under the doctrine of equitable subrogation." *Id*. Similarly, the trial court denied Gibson's motion for summary judgment seeking foreclosure.

Gibson appealed. In *Gibson v. Neu*, 867 N.E.2d 188 (Ind. Ct. App. 2007), we reversed the trial court's determination that Gibson was required to release his mortgage on the Indiana Real Estate because we found that Nowak had defaulted by being behind in his payments to Gibson. At the same time, we also reversed the denial of Gibson's summary judgment motion requesting foreclosure but affirmed the trial court's ruling on equitable subrogation. Following this decision, Washington Mutual Bank assigned its interest to Wells Fargo. Wells Fargo was duly substituted as a party in the proceedings.

## II. *Legal Proceedings in Michigan*

Meanwhile, and unbeknownst to the Neus, Gibson pursued legal proceedings in Michigan with respect to the Michigan Real Estate. On October 27, 2006, approximately fifteen months after Gibson commenced legal proceedings in Indiana, Gibson filed a Complaint for foreclosure in the circuit court for Oscoda County, Michigan, seeking a judgment on his promissory note and foreclosure of his mortgage against the Michigan Real Estate. Nowak did not appear or defend himself in the case. On May 14, 2007, the Oscoda County Michigan Circuit Court held a hearing on Gibson's motion for default judgment. At the close of the hearing, the circuit court entered a judgment of foreclosure in favor of Gibson in the amount of $305,722.48, ordered the sale of the Michigan Real

4

Estate, and ordered that the "upset price"[1] for the Real Estate would be $302,386.87, "and shall not be sold for less." (Appellant's App. p. 77).

On July 27, 2007, the Oscoda County Sheriff sold the Michigan Real Estate at public auction. Gibson was the high bidder with a bid of $305,722.48. On August 8, 2007, Gibson obtained a sheriff's deed for the Michigan Real Estate. Although Michigan law provides for a six month redemption period during which the former owner may redeem the property from the sale by outbidding the sheriff's sale purchaser, Nowak did not redeem the property. On January 11, 2008, Gibson moved to confirm the sheriff's sale in the Oscoda County Circuit Court. His motion was granted on February 4, 2008.

On June 1, 2011, Gibson filed a motion to reopen the case, a motion for relief from court's order, and a brief in support thereof. First American Title Insurance Company (First American), as underwriter of the Neus's title insurance, sought and was granted leave to intervene. On July 19, 2011, after a hearing, the Oscoda County Circuit Court denied Gibson's motion. On August 5, 2011, Gibson applied for leave to appeal with the Michigan Court of Appeals, which was denied on February 29, 2012, for "lack of merit in the grounds presented." (Appellee's Supp. App. p. 7).

III. *Post-Michigan Sheriff's Sale*

---

[1] Pursuant to Michigan law, an upset price is essentially the minimum amount for which the sheriff may sell the property. It is a discretionary mechanism to prevent properties from being sold at artificially low amounts, exposing debtors to high deficiency judgments. *See* M.C.L. § 600.3155; *Mutual Ben. Life Ins. Co. v. Wetsman*, 269 N.W. 189 (Mich. 1936).

On October 19, 2007, upon remand to the trial court after we issued our opinion in *Gibson v. Neu*, 867 N.E.2d 188 (Ind. Ct. App. 2007), the Appellants moved the trial court to determine the amount of their lien on the Indiana Real Estate as including the $506,000 payoff of the Irwin mortgage plus interest at the 6.25% rate. Because Gibson had failed to exercise his right to a sheriff's sale on the Indiana Real Estate following this court's grant of summary judgment, the Appellants also moved to foreclose on the residence and requested the trial court to order a sheriff's sale to satisfy the liens in their order of priority.

Three weeks later, on November 5, 2007, Gibson filed a motion requesting the trial court in Indiana to grant him a foreclosure judgment against the Neus' Indiana Real Estate in the amount of $380,438.57. In support of this motion, Gibson submitted a sworn supplemental declaration, which included a copy of his mortgage on the Michigan Real Estate, and notified the trial court that

> 4. I have been pursuing a foreclosure action in Oscoda County, Michigan, and I have obtained a judgment against [Nowak] on the mortgage. However, I have also learned that the property was titled not only in [Nowak's] name, but also in his ex-wife's name. I am pursuing additional proceedings related to that issue.[2]
>
> 5. More recently, I have learned that the cabin was not built on the property that was described in the Oscoda County Mortgage. It was mistakenly built on the adjoining neighbor's property.[3]

---

[2] Gibson ultimately received a Quitclaim Deed from Nowak's ex-wife.

[3] Gibson is engaged in ongoing litigation in Michigan with neighboring owners regarding the ownership of the cabin. A complaint was filed on November 29, 2010. On February 7, 2012, the Oscoda County Circuit Court approved a settlement agreement and executed an Order to dismiss Gibson's Complaint against the neighbors. In this agreement, both parties agreed to a resolution of their dispute pending finality of the appeals process in Michigan's foreclosure action. The agreement essentially quitclaims the property upon which the cabin is located to the neighbors.

6. Although I do have the mortgage on property in Michigan, there are numerous complicating issues that make recovery from the Michigan property speculative at best.

7. In connection with the Michigan foreclosure action, I have incurred Two Thousand Nine Hundred Sixty-Six Dollars and Twenty-Eight Cents ($2,966.28) in attorney's fees and expenses to date. I anticipate incurring a minimum of another $3,000.00 in attorneys' fees and expenses on the remaining issues in Michigan.

(Appellant's App. pp. 51-52). Gibson did not disclose that a sheriff's sale on the Michigan Real Estate had taken place and that he had submitted the winning bid of $305,722.48.

On November 21, 2007, the trial court entered a judgment of foreclosure against the Indiana Real Estate in favor of Gibson in the amount of $380,438.57 plus interest at the statutory rate, attorney fees, and costs. In addition, the trial court found that the Neus' lien had priority over Gibson's but denied the Appellants' request for a sheriff's sale. Subsequently, the Appellants moved alternatively to amend the order or to correct errors. In particular, they requested the trial court to allow them to force a sheriff's sale or to clarify that the order was not a final, appealable order and that they were permitted to file a foreclosure claim. On March 24, 2008, the trial court confirmed that its previous order was not final and that the Appellants were not precluded from filing for foreclosure. Thereafter, the Appellants sought and received leave to file a counterclaim and cross-claim for foreclosure. They argued that Nowak had defaulted under the Irwin mortgage, to which they were subrogees. They asked the trial court to posit their lien first, enter judgment against Nowak, foreclose on their mortgage, and direct a sheriff's sale. Gibson filed a cross-motion for summary judgment, asserting that the trial court could not order

7

foreclosure because the Neus were not in default. On October 22, 2008, the trial court denied the Appellants' motion and granted Gibson's.

Appellants appealed and, following a court of appeals opinion, our supreme court granted transfer. In *Neu v. Gibson*, 919 N.E.2d 556 (Ind. 2010), the supreme court affirmed the trial court's judgment in all respects. The supreme court noted, "[t]he Neus characterize foreclosure or forcing a sheriff's sale as their only viable option to protect their interest. In fact they have at least two other options . . . Alternatively, they can take the matter up with their title insurance company, which is also the party who failed to find Gibson's lien." *Id*. at 564. Shortly thereafter, the Appellants took our supreme court's advice and made a demand under their title insurance policy, which First American, as underwriter of the Neus's policy, refused to pay. The Neus filed a complaint against First American and proceedings are ongoing.

On April 15, 2011, following our supreme court's opinion in *Neu v. Gibson*, 928 N.E.2d 556 (Ind. 2010), in which the supreme court affirmed the trial court's denial of the Appellants' request to foreclose their lien on the Indiana Real Estate or to request a sheriff's sale of the Real Estate, Appellants filed their motion for relief from judgment and for attorney fees. In their motion for relief, they asked the trial court to deem Gibson's foreclosure decree fully satisfied because Gibson had reduced his promissory note to judgment in Michigan and bid the full amount of that judgment to acquire his Michigan collateral at a sheriff's sale. On June 7, 2011, Gibson filed a three-hundred page objection to the motion. On July 29, 2011, Gibson filed a motion to amend the

8

judgment, asking the trial court to award him additional interest and attorney fees in the amount of $39,988.25.

On August 16, 2011, the trial court denied Appellants' motion for relief from judgment and for attorney fees. At the same time, it also denied Gibson's motion to amend the judgment. On August 31, 2011, Appellants moved the trial court to reconsider the denial of the motion for relief from judgment or, in the alternative, to determine the amount still due on Gibson's judgment after accounting for his bid on the Michigan Real Estate during the sheriff's sale.

On September 13, 2011, Appellants initiated their appeal from the trial court's

(a) Entry of August 16, 2011 denying [Appellants'] motion for relief from judgment and for attorney's fees; and (b) the [trial] [c]ourt's September 6, 2011 denial of [their] motion to (1) reconsider denial of motion for relief from judgment and (2) to determine judgment amount [fn 1].

(Appellant's App. p. 574). In the referenced footnote 1, Appellants clarified that "[t]o the extent that this motion constitutes a motion to reconsider, it was deemed denied by operation of law due to lapse of time pursuant to Ind. Trial Rule 53.4(B)[4]. [Appellants] continue to seek a ruling upon that motion." (Appellant's App. p. 574). Thereafter, on October 14, 2011, the trial court entered its order denying Appellants' August 31, 2011 motion to reconsider but granting their motion to determine the remaining amount of Gibson's judgment. The trial court ordered that, after deducting the amount of Gibson's bid to purchase the sheriff's deed to the Michigan Real Estate, the balance due on Gibson's judgment was $74,716.09.

---

[4] Indiana Trial Rule 53.4(B) provides that unless a motion to reconsider a ruling on a motion is ruled upon within five days, it shall be deemed denied.

9

On October 27, 2011, Gibson filed a verified motion with this court to vacate or strike the trial court's order of October 14, 2011, asserting that the trial court lacked jurisdiction when it issued its order determining Gibson's remainder judgment because the appeal on Appellants' motion for relief from judgment had been perfected by October 14, 2011. On December 12, 2011, the motions panel of this court denied Gibson's verified motion. Four days later, on December 16, 2011, Gibson filed another verified motion for leave to file an appeal with this court, alerting this court that he intended to "cross-appeal the [t]rial [c]ourt's denial of [his] motion to amend that was part of the August 16, 2011 order and to "challenge the merits of the October 14 order[.]" (Appellee's Verified Motion p. 4). To that end, Gibson, "out of an abundance of caution," requested leave to appeal the trial court's October 14, 2011 order in the event we conclude that he has to file a separate notice of appeal relating to the October 14, 2011 order. On December 30, 2011, our motions panel transferred Gibson's motion for ruling by the assigned writing panel. On January 3, 2012, Appellants filed an objection to Gibson's verified motion.

Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *The Trial Court's October 14, 2011 Order*

Prior to turning to the gravamen of the issues before us, we need to address the motion transferred to this panel for decision. Focusing on the trial court's October 14, 2011 order, Gibson initially requested our motions panel to vacate or strike the order, contending that the trial court did not have jurisdiction to issue the order as the

10

Appellants' instant appeal had been perfected four days earlier, on October 11, 2011. On December 12, 2011, our motions panel denied Gibson's verified motion. On December 16, 2011, Gibson filed a second motion for leave to file an appeal or cross-appeal to the trial court's October 14, 2011 order. On December 30, 2011, the motions panel directed a decision on Gibson's second motion to be transferred to the writing panel for ruling.

A. *Verified Motion for Leave to File Appeal*

In his verified motion for leave to file appeal, filed on December 16, 2011, Gibson requested

> leave to file an appeal or cross-appeal of the [t]rial [c]ourt's [o]rder dated October 14, 2011. Because of the unusual procedural history of this case, Gibson requests leave to ensure that all the remaining issues in this case are presented to the [c]ourt for resolution in connection with this pending appeal.

(Appellee's Motion p. 1).

Pursuant to Appellate Rule 9, a party initiates an appeal by filing a notice of appeal within thirty days after entry of judgment. "Unless the [n]otice of [a]ppeal is timely filed, the right to appeal shall be forfeited[.]" Ind. Appellate Rule 9(A)(5). Here, the trial court issued its order on October 14, 2011; Gibson did not seek leave to appeal this order until December 16, 2011.

We have always considered perfecting a timely appeal a jurisdictional matter. *See Claywell v. Rev. Bd. of Ind. Dept. of Employment and Training Serv., et. al.*, 643 N.E.2d 330, 330 (Ind. 1994). Absent a timely notice of appeal, no jurisdiction is conferred on this court. *See Davis v. Pelley*, 102 N.E.2d 910, 911 (Ind. 1952). Therefore, as we no

11

longer are within the thirty-day time limit during which a timely appeal can be perfected, we have no choice but to deny Gibson's motion for leave to file appeal.

## B.  *Motion to Vacate or Strike*

Next, because of the unusual and complicated procedural posture of this case, we necessarily have to revisit our motions panel's decision on Gibson's motion to vacate or strike the trial court's October 14, 2011 order.  Gibson's main intent in filing his motion for leave to file appeal—which we denied—was to clarify the precise issues before us. Gibson noted:

> The Appellants have appealed the denial of a combined motion titled [m]otion to (1) [r]econsider [d]enial of [m]otion for [r]elief from [j]udgment and (2) to [d]etermine [a]mount of [j]udgment.  After the Appellants' appeal was perfected, the [t]rial [c]ourt – in a single order – denied the [m]otion to [r]econsider portion and granted the [m]otion to [d]etermine portion, both of which were already before this [c]ourt on appeal.  Gibson informed this [c]ourt and Appellants that Gibson intended to challenge the October 14 [o]rder when he filed his [v]erified [m]otion to [s]trike or [v]acate.  Gibson neglected to file his [n]otice of [a]ppeal because the undersigned counsel determined that the ruling on the [m]otion to [d]etermine was already the subject of Appellants' appeal as described in the [n]otice of [a]ppeal and the Case Summary, which would allow Gibson to cross-appeal pursuant to Appellate Rule 9.  At most, the October 14 [o]rder was a modification of the orders already on appeal.  Thus, the procedural posture of this case makes it unique and militates in favor of granting leave so the parties and the [c]ourt are all clear on what issues and orders are before the [c]ourt.

(Appellee's Verified Motion p. 5).

While our motions panel denied Gibson's motion to vacate or strike, it is within our jurisdictional purview to revisit this decision.  Although we are reluctant to overrule orders decided by the motions panel, this court has inherent authority to reconsider any

decision while an appeal remains *in fieri*. *Miller v. Hague Ins. Agency, Inc*., 871 N.E.2d 406, 407 (Ind. Ct. App. 2007), *reh'g denied*.

On April 15, 2011, Appellants filed their motion for relief from the trial court's judgment refusing to order a foreclosure on the Indiana Real Estate as well as refusing to grant attorney fees. On July 29, 2011, Gibson filed his motion to amend the judgment, requesting an additional amount in interest and attorney fees. On August 16, 2011, the trial court denied the Appellants' requested relief from judgment and denied Gibson's motion to amend. Approximately two weeks later, on August 31, 2011, Appellants moved the trial court to reconsider its denial of relief from judgment or alternatively, to determine the amount due to Gibson. By application of Indiana Trial Rule 53.4(B) and without waiting for the trial court's response, on September 13, 2011, Appellants initiated their appeal from the trial court's "September 6, 2011 denial of [their motion to (1) reconsider denial of motion for relief from judgment and (2) to determine judgment amount." (Appellant's App. p. 574). Jurisdiction over these issues was transferred from the trial court to the court of appeals on October 7, 2011 upon notice of completion of the clerk's record. Thereafter, on October 14, 2011, the trial court denied Appellants' motion to reconsider but determined the amount due to Gibson as $74,716.09.

Our courts have consistently held that when appellate jurisdiction is acquired, the trial court is deprived of any further jurisdiction in the action. *Donahue v. Watson*, 413 N.E.2d 974, 975-76 (Ind. Ct. App. 1980), *reh'g denied*. The rule does not promote form over substance; it facilitates the orderly presentation and disposition of appeals and prevents the confusing and awkward situation of having the trial and appellate courts

13

simultaneously reviewing the correctness of the judgment. *Id*. at 976. However, although the trial court may retain jurisdiction to perform other tasks, it is not permitted to intermeddle with the subject-matter on appeal. *Bradley v. State*, 649 N.E.2d 100, 106 (Ind. 1995), *reh'g denied*.

In their motion for relief from judgment and for attorney fees, filed on April 15, 2011, the Appellants asserted that the trial court's judgment in favor of Gibson in the amount of $380,438.57 should be set aside and deemed fully satisfied. They contended that the Indiana Judgment was satisfied through the sheriff's sale of the Michigan Real Estate and sought release from the underlying promissory note.

In their subsequent motion to reconsider denial of motion from judgment and, alternatively, to determine the amount of judgment, filed on August 31, 2011, the Appellants noted:

> 3. [Appellants] contend that Gibson's judgment was fully satisfied by virtue of his bid in Michigan for the reasons stated in its previous filings, including but not limited to:
> > a) in July of 2011, Gibson's own lawyers in Michigan conceded that his bid was a "total debt bid" in pleadings filed with the court in Michigan.
> > b) Gibson did not take any of the steps required to obtain a deficiency following the Michigan sheriff's sale, which constituted an absolute waiver of any alleged deficiency.
> > c) having entered a bid of $305,722.48 in Michigan on July 27, 2007, Gibson had no basis to request a judgment in Indiana, certainly not one in the amount of $380,438.57.
> For these reasons, the [c]ourt should reconsider its ruling and order Gibson to release his mortgage and file a satisfaction of his judgment.
>
> 4. If the [c]ourt decides not to reconsider its denial of the [Appellants'] motion for relief from judgment, the critical unanswered question in this case is the current amount due on Gibson's judgment. The [Appellants] believe that, at an absolute minimum, Gibson's judgment must be reduced

14

by $305,722.48, the amount Gibson bid to acquire the Michigan [Real Estate].

(Appellants App. p. 570). On September 13, 2011, Appellants appealed both their motion for relief from judgment and their motion to reconsider denial of relief. This appeal was perfected on October 7, 2011. On October 14, 2011, the trial court determined that while the Appellants should not be released by the bid Gibson entered during the sheriff's sale of the Michigan Real Estate, the judgment in favor of Gibson should nevertheless be reduced by §305,722.48.

Appellants now claim that the trial court retained jurisdiction to rule on their motion to reconsider, filed on August 31, 2011, because it included issues which are separate and distinct from the issues on appeal. Specifically, they contend that both motions are dissimilar because the authority for each motion is found in different procedural rules. They elaborate that their motion for relief from judgment and attorney fees was filed pursuant to T.R. 60 which provides the guidelines for motions for relief from judgment. On the other hand, they maintain that their subsequent motion to reconsider the trial court's denial of relief from judgment and, alternatively, to determine the amount due to Gibson was a motion to compel compliance with T.R. 67(B), which requires that if a judgment holder receives a payment, he shall furnish to the clerk, party, or person making payment a signed statement of total or partial satisfaction of the judgment.

We disagree. Although the procedural rule under which both motions are pursued is distinct, the legal content of the motions is essentially the same: both motions address

15

the impact of the Michigan Real Estate sheriff's sale on the foreclosure action of the Indiana Real Estate. Therefore, as the Appellants' appeal of both motions was perfected prior to the entry of the trial court's order,[5] the trial court impermissibly intermeddled with the issues before us when it subsequently entered its order of October 14, 2011. *See Bradley*, 649 N.E.2d at 106. Where a trial court, having once had jurisdiction, has been divested of that jurisdiction and still attempts to exercise its power, its actions are void. *Carter v. Allen*, 631 N.E.2d 503, 507 (Ind. Ct. App. 1994). As such, we conclude that the motions panel erred by denying Gibson's motion to vacate or strike the trial court's October 14, 2011 judgment. We hereby order the trial court's October 14, 2011 order stricken.

## II. *Merits of the Appeal*

Despite the complicated procedural posture of this case, it should be borne in mind that the prevalent merits of this case turn on the legal characterization of the Michigan Real Estate and its implication on the foreclosure proceedings in Indiana. In this light, the Appellants present us with two issues. First, Appellants assert that the trial court abused its discretion by denying their motion seeking relief from the trial court's order to foreclose on the Indiana Real Estate on the ground that the judgment had been fully satisfied within the meaning of T.R. 60(B)(7). Relying on the parallel foreclosure action on the Michigan Real Estate, Appellants claim that Gibson's full credit bid on the

---

[5] Because we hold that Appellants' appeal comprises an appeal against both the trial court's August 16, 2011 entry as well as the trial court's denial of Appellants' motion to reconsider denial of relief from judgment or alternatively to determine the amount due to Gibson, Gibson can properly raise a cross-appeal to the trial court's denial of his motion to amend judgment as entered as part of the trial court's August 16, 2011 order in his appellee's brief without the need to file a formal appeal in his own name. *See* Appellate Rule 9(D).

16

Michigan Real Estate had the legal effect of satisfying Nowak's underlying promissory note to Gibson. As a result, Gibson's Indiana judgment, based on the same underlying obligation must be deemed fully satisfied and removed as a lien from the Neus' home. As a second argument, Appellants contend that the trial court erred when it denied them attorney fees resulting from Gibson's continued litigation of this action in bad faith following the entry of the Michigan Real Estate sheriff's sale. We will address each argument in turn.

A. *Foreclosure Action*

First, we analyze whether the trial court abused its discretion when it refused to grant Appellants relief from the judgment because Gibson's foreclosure claim on the Indiana Real Estate was fully satisfied when he became the successful bidder during the sheriff's sale of the Michigan Real Estate. Pursuant to T.R. 60(B)(7), a court may relieve a party from a judgment when the judgment has been "satisfied, released, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application[.]"

In general, a trial court's grant or denial of a motion for relief from judgment is reviewed under an abuse of discretion standard. *Beike v. Beike*, 805 N.E.2d 1265, 1267 (Ind. Ct. App. 2004). An abuse of discretion occurs when the trial court's judgment is clearly against the logic and effect of the facts and inferences supporting the judgment for relief. *Id*. The trial court's decision with regard to a Trial Rule 60(B) motion is given substantial deference on appeal. *Monroe Guar. Ins. Co. v. Engineered Roofing Systems,*

17

*Inc.*, 859 N.E.2d 754, 760 (Ind. Ct. App. 2007), *reh'g denied*. We will not reweigh the evidence or substitute our judgment for that of the trial court. *Id.*

The Appellants' primary argument focuses on Gibson's entry of a full credit bid in the sheriff's sale for the Michigan Real Estate. Because he bid the full amount, Appellants now maintain that Gibson's claim against the Indiana Real Estate, which rests on the same underlying promissory note as the Michigan Real Estate, is barred by the "full credit bid rule." (Appellants' Br. p. 10).

In Michigan's seminal case on the full credit bid rule, *Bank of Three Oaks v. Lakefront Properties*, 444 N.W.2d 217, 218 (Mich. Ct. App. 1989), the lender obtained a judgment on a promissory note. At the subsequent sheriff's sale of the debtor's real property, the lender bid the entire amount of its judgment to purchase the property. *Id.* Thereafter, the lender sought to enforce an additional money judgment for interest, attorney fees and costs accrued after the date of the sheriff's sale. *Id.* at 218. The Michigan court of appeals held that

> [w]hen property is purchased at a foreclosure sale for a price equal to the amount due on the mortgage, the debt is satisfied. Moreover, the mortgage is extinguished at the time of the foreclosure sale. Here, the bank's purchase of the property for the entire amount of the outstanding indebtedness extinguished the debt and mortgage.

*Id.* at 219.

Indiana's precedential case law on this issue closely follows Michigan's established rules. In *Titan Loan Investment Fund, L.P. v. Marion Hotel Partners, LLC.*, 891 N.E.2d 74 (Ind. Ct. App. 2008), *trans. denied,* we stated:

As a general rule, it has long been recognized that the payment of a bid at a sheriff's sale sufficient to satisfy the judgment extinguishes the judgment. This is true where, as here, the judgment creditor was the purchaser at his own sale. Where the judgment creditor bids the judgment instead of cash, such a credit bid is as effective as payment in actual money would have been, . . . inasmuch as here there is no reason for going through the empty form and idle ceremony of handing the money over . . . and then receiving it back[.] In sum, where a judgment creditor has paid the full amount of the judgment, interest, and costs at a sheriff's sale there is a complete satisfaction of the judgment.

*Id.* at 76. Discussing the full credit bid rule, we held that

the full credit bid rule precludes a lender for purposes of collecting its debt from making a full credit bid and subsequently claiming that the property was actually worth less than the bid. The rule applies here because Titan bid and paid the full amount of its judgment, interest and costs at the sheriff's sale.

*Id.* at 77.

In the case before us, on May 14, 2007, Gibson obtained a foreclosure judgment on Nowak's promissory note with regard to the Michigan Real Estate in the amount of $305,722.48. On July 27, 2007, the Michigan Real Estate was sold by way of a sheriff's sale where Gibson submitted the highest bid of §305,722.48. Thus, as Gibson purchased the Michigan Real Estate for a price equal to the amount of the foreclosure judgment, the debt became satisfied and the underlying promissory note was extinguished. *See Bank of Three Oaks v. Lakefront Properties*, 444 N.W.2d at 219.

In an attempt to avoid the extinguishment of the underlying promissory note, and consequently the removal of the mortgage on the Indiana Real Estate, Gibson responds with five separate arguments relating to: (1) the amount of bid; (2) the upset price; (3)

19

the fair market value of the property; (4) the lack of finality of the Michigan proceedings; and (5) Appellants' title insurance.

### 1.  *The Amount of Gibson's Bid*

Gibson contends that although the Michigan judgment set the foreclosure amount at $305,722.48, the court also awarded him the interest due at the time of sale together with taxable costs, which resulted in a combined total of $8,346.72.  Thus, he maintains that because at the time of the sheriff's sale, the total foreclosure amount was $314,069.20, Gibson's bid of §305,722.48 was not a full credit bid.

Pursuant to the Michigan foreclosure statute, the original foreclosure judgment must include a statement that "upon the confirmation of the report of sale that if either the principal, interest, or costs ordered to be paid is left unpaid after applying the amount received upon the sale of the premises, the clerk of the court shall issue execution for the amount of the deficiency upon the application of plaintiff's attorney without notice to the defendant or his attorney."  M.C.L. § 600.3150.  Our review of the judgment of foreclosure reveals the lack of this provision granting Gibson the right to apply for the amount of the deficiency.  As a result, in the absence of this language in the foreclosure judgment and Gibson's failure to preserve any deficiency through judicial proceedings, Gibson bid the full amount as set forth in the foreclosure judgment.  *See Kelly v. Gaukler*, 129 N.W.703, 707 (Mich. 1911) (Where a foreclosure decree provides for the sale of land, there is no personal liability to be enforced against a defendant, until after it is sold and a deficiency reported, and subsequent proceedings are taken to secure a deficiency decree).

20

## 2. *The Upset Price*

Gibson spends several pages of his brief decrying his complete lack of understanding of the Michigan foreclosure proceedings and perceived errors of his Michigan counsel. Specifically, Gibson contends that his bid should not count against him because the Oscoda County Circuit Court set an artificially high price for the Michigan Real Estate. In a related argument, he claims that he was given bad counsel as his Michigan attorney failed to advise him that his bid could have a bearing on the foreclosure proceedings in Indiana.

In Michigan, mortgage foreclosure proceedings are special and statutory and not an exercise of the inherent equity powers of the court. *Wurzer v. Geraldine*, 256 N.W. 439, 440 (Mich 1934). The foreclosure statute, M.C.L. § 600.3155, grants a trial court the right to set an upset price by enacting that in any foreclosure case based upon a mortgage on real estate or land contract the court may fix and determine the minimum price at which the real property covered by the mortgage or land contract may be sold at the sale under the foreclosure proceedings. While the imposition of this upset price by the trial court is permissive and not mandatory, the price should be fixed at the fair value of the property. *Mutual Ben. Life Ins. Co. v. Wetsman*, 269 N.W. 189 (Mich. 1936); *Holden v. Applebaum*, 255 N.W.601 (Mich. 1934).

On May 14, 2007, the Oscoda County Circuit Court held a hearing on Gibson's motion for default judgment against Nowak. During the hearing, Gibson's counsel requested the circuit court:

21

In this particular case I can ask for an upset price, and I'm asking for the upset price to be the price actually set forth in the [c]omplaint. So that excludes real estate taxes and taxable costs. The amount of the upset price that thereby the defendant would at least have had notice of the $302,386.87 as an upset price.

(Appellants' App. p. 519). At the close of the hearing, the court stated "I'm going to sign the [j]udgment of [f]oreclosure as submitted." (Appellants' App. p. 519). In its order, the court noted that "the property shall have an upset price of $302,386.87 and shall not be sold for less." (Appellants' App. p. 306). Although the trial court, at the request of Gibson, set an upset price for the Michigan Real Estate, it did not order Gibson, as now alluded by him, to enter a bid. Rather, if he indeed believed the upset price to be too high, he could have declined to bid.

Furthermore, Gibson also could have focused the court's attention on the perceived high bid when he filed his motion to confirm the sheriff's sale in January 2008. Pursuant to M.C.L. § 600.3140 a borrower has six months from the date of sale to redeem the property by paying the bid amount. After expiration of that period, the purchaser can file a motion to confirm the sale. *See* M.C.L. § 600.3140. "This confirmation by the court is not a mere ministerial act, but a judicial function involving consideration of the circumstances in each instance and the exercise of sound discretion." *Detroit Trust v. Hart*, 269 N.W. 598, 599 (Mich. 1936). "It rests wholly in the discretion of the court whether the sale shall be confirmed or set aside, and this power will be exercised prudently and fairly in the interest of all concerned[.]" *Michigan Trust Co. v. Cody*, 249 N.W. 844, 845 (Mich. 1933). As pointed out by Appellants, when Gibson filed his motion to confirm the sheriff's sale, he was aware of the auction price and of potential

issues surrounding the ownership of the Michigan Real Estate. Just two months before, on November 5, 2007, Gibson had filed a motion in the Indiana proceedings requesting the trial court to grant him a foreclosure judgment against the Indiana Real Estate. In these pleadings, he represented to the trial court that although he held the mortgage on the Michigan Real Estate, numerous complicating issues would make recovery "speculative at best." (Appellants' App. p. 52).

In sum, Gibson's ultimate bid at the sheriff's sale was three thousand dollars higher than the upset price which he characterized as unjustifiably high. Even though he had opportunities to revisit this high sale price, he did not avail himself of these proceedings. Therefore, Gibson cannot now be heard to complain.

Gibson's related argument based on the perceived defective advice of his Michigan counsel is equally without merit. Gibson claims that his Michigan counsel failed to adequately warn him about the upset price and, most notably, its implications on the Indiana foreclosure proceedings. Consequently, he advances that he was unaware of the legal intricacies involved and he should not be bound by his counsel's actions.

In Michigan, the neglect of an attorney is generally attributable to his client. *White v. Sadler*, 87 N.W.2d 192, 198 (Mich 1957). As elaborated in *American Way Service Corp. v. Comm'r of Ins.*, 317 N.W.2d 870, 876 (Mich. Ct. App. 1982):

> Were courts authorized to disturb judgments because of the neglect and unskillfulness of attorneys appearing in the cases, the character of these adjudications of the courts for stability would be wonderfully impaired. It would frequently occur that a judgment would not be regarded as settling the rights of the parties, until the court had, in a proceeding of this character, passed upon the skill and diligence of the counsel. This would not result so often from actual negligence or want of skill of attorneys, as

23

from the disposition of litigants to avail themselves of every possible avenue of escape from the consequences of defeat.

Gibson presented a similar argument in his motion to reopen the case filed on June 1, 2011 in the Oscoda County Circuit Court. In his brief in support of this motion, Gibson asserted that he "was advised in error that the foreclosure would not affect his rights related to the property in Indiana." (Appellants' App. p. 355). Addressing this and similar other arguments of error, the circuit court, during the hearing on Gibson's motion, noted that Gibson's counsel "worked within the authority that was vested in him. It might have been to [Gibson's] detriment but I think that he had the authority to do what he did." (Appellants' App. p. 563). On July 19, 2011, the circuit court denied Gibson's motion to reopen the foreclosure proceedings in Michigan. We refuse to disturb the court's finding with respect to Gibson's assertions of his counsel's errors.

### 3. *Fair Market Value of the Michigan Real Estate*

Next, Gibson contends that we should use the market value of the Michigan Real Estate—not the full credit bid—and adjust the amount involved in the Indiana foreclosure proceedings accordingly. On March 5, 2008, after Gibson had made his successful bid at the sheriff's sale of the Michigan Real Estate, Gibson had an appraisal conducted of the property to determine its value. The appraisal indicated that the Michigan Real Estate, including the property that was mistakenly thought to be constructed on it, was worth $72,000. Gibson now encourages this court to use the property's appraised value instead of his full credit bid.

24

A similar situation—analyzing the effect of a low fair market value in relation to a high full credit bid—was previously addressed in *Pulleyblank v. Cape*, 446 N.W.2d 345, 347 (Mich. Ct. App. 1989), where Pulleyblank bid $251,792 for a property that was later found to be worth only $130,000. The court held that

> [i]t would defy logic to allow Pulleyblank to bid an inflated price on a piece of property to ensure that they would not be overbid and to defeat the equity of redemption and to then claim that the true value was less than half of the value of the bid.

Indiana's case law is built upon the same premise and underlying purpose. In *Titan Loan Investment Fund, L.P.,* 891 N.E.2d at 76*,* we stated that "the full credit bid rule precludes a lender for purposes of collecting its debt from making a full credit bid and subsequently claiming that the property was actually worth less than the bid." As such, we decline to accept the appraised value of the Michigan Real Estate instead of Gibson's full credit bid.

### 4. *Finality of the Proceedings in Michigan*

In support of his argument that his full credit bid on the Michigan Real Estate did not satisfy the underlying promissory note, Gibson maintains that because he is appealing the denial of his motion to reopen the case by the Oscoda County Circuit Court, the Michigan proceedings are still pending and, as a result, the promissory note is not yet extinguished.

Yet, the Michigan judicial proceedings have caught up with Gibson's argument. Although at the time of Gibson's appellate brief, Gibson's request for leave to appeal his motion to reopen was pending, the Michigan Court of Appeals denied this request on February 29, 2012 "for lack of merit in the grounds presented." (Appellee's Supp. App.

25

p. 7). It should be noted that Gibson has indicated his intent to seek a rehearing on the denial.

Second, at no time during the proceedings did Gibson undertake any steps to stay the enforcement of the court's order. Pursuant to Mich. Court Rule 7.209(A), "an appeal does not stay the effect or enforceability of a judgment or order of a trial court unless the trial court or the [c]ourt of [a]ppeals otherwise orders." Neither the Oscoda County Circuit Court, nor the Michigan Court of Appeals has ordered a stay. As such, Gibson is now requesting us to give him the benefit of a stay in Indiana in his proceedings in Michigan that he never requested before the proper Michigan tribunal. We decline to do so.

5. *Appellants' Title Insurance*

Lastly, Gibson contends that he "and [the ] Neus each have a mess on their hands as a result of the title company's failure to find Gibson's mortgage and refusal to pay [the] Neus' claim. The trial court's exercise of its equitable discretion in not rewarding First American for the mess it created under the facts and circumstances of this case was not an abuse of its discretion." (Appellee's Br. p. 28). In essence, Gibson's thinly-veiled point is that we should not hesitate to affirm the trial court's decision because any loss arising from an adverse ruling to the Neus will be borne by their insurance company.

As pointed out by Appellants, First American, who holds the title insurance, is not a party to the instant cause. Therefore, Gibson is mistaken in his suggestion that the trial court exercised its equitable discretion against First American. Moreover, the mere fact that the Neus are fortuitous to carry title insurance cannot be an element in our decision-

26

making process as it deems to penalize the prudent home buyer. It might, however, become a factor when calculating damages; but, whether the statutory collateral source rule can come into play here is not an issue that is before us.

In sum, Gibson, through the underlying promissory note, owned the mortgage to two properties: the Indiana Real Estate and the Michigan Real Estate. Upon Nowak's default on his promissory note obligations, Gibson pursued foreclosure on both properties. Although legal proceedings were initially brought in Indiana, Gibson elected to bring the Michigan Real Estate to a sheriff's sale first. The judgment of foreclosure was set by the Oscoda County Circuit Court, a full credit bid was made by Gibson and consequently accepted. As Gibson purchased the Michigan Real Estate for a price equal to the amount of the foreclosure judgment, the debt became satisfied and the underlying promissory note was extinguished. *See Bank of Three Oaks v. Lakefront Properties*, 444 N.W.2d at 219; *Titan Loan Investment Fund, L.P.,* 891 N.E.2d at 76. With the satisfaction of the underlying promissory note, there is no longer any debt to support the foreclosure on the Indiana Real Estate. If, in fact, we were to allow Gibson to foreclose on the Indiana Real Estate after foreclosing on the Michigan Real Estate, we would grant him a windfall, which we are not prepared to do.

Although Gibson contends that the foreclosure judgment on the Indiana Real Estate was higher than the full credit bid obtained on the Michigan Real Estate, this distinction is unavailing. As noted, the debt became fully satisfied and the mortgage on the Indiana Real Estate was extinguished at the time of the full credit bid. If, at that time, Gibson was due any costs or interests from his pursuit in the Indiana proceedings, Gibson

27

should have requested a deficiency judgment in the Oscoda County Circuit Court.[6]

Accordingly, we conclude that the trial court abused its discretion by denying Appellants' motion seeking relief from the trial court's order to foreclose on the Indiana Real Estate.

### B. *Attorney Fees*

Building on the procedural problems in this case, Appellants next contend that because of Gibson's continued litigation of this matter after his claim was legally satisfied, Gibson should be ordered to pay attorney fees. Appellants request this award of attorney fees based upon a two-fold argument: (1) by failing to update his discovery in a timely manner, Gibson litigated in bad faith; and (2) Gibson engaged in groundless litigation by knowingly continuing his action after his judgment was satisfied through the sheriff's sale of the Michigan Real Estate.

Indiana follows the "American Rule," whereby parties are required to pay their own attorney fees absent an agreement between the parties, statutory authority, or other rule to the contrary. *Smyth v. Hester*, 901 N.E.2d 25, 32 (Ind. Ct. App. 2009), *reh'g denied, trans. denied*. Accordingly, an award of attorney fees is not allowed in the absence of a statute, agreement or stipulation authorizing such an award. *Id*. Here, Appellants request attorney fees pursuant to Indiana Code section 34-52-1-1, which provides, in relevant part, that the trial court

> may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

---

[6] Because we hold that Gibson's full credit bid extinguished the underlying obligation of the promissory note and consequently the mortgage on the Indiana Real Estate, we need not address Gibson's cross-appeal in which he asserted that the trial court abused its discretion when it denied Gibson's motion to amend the judgment.

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;
(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless, or
(3) litigated the action in bad faith.

Ind. Code § 34-52-1-1(b). Such a statutory award may be made upon a finding of any one of the statutory bases. *Smyth*, 901 N.E.2d at 32.

Analyzing the purpose of Indiana Code section 34-52-1-1, our supreme court first noted that the statute strikes a balance between respect for an attorney's duty of zealous advocacy and the important policy of discouraging unnecessary and unwarranted litigation. *Mitchell v. Mitchell*, 695 N.E.2d 920, 924 (Ind. 1998). The court observed further that the legal process must invite, not inhibit the presentation of new and creative arguments to enable the law to grow and evolve. *Id*. Therefore, the *Mitchell* court concluded that application of the statutory authorization for recovery of attorney fees must leave breathing room for zealous advocacy and access to the courts to vindicate rights. *Id*.

Appellate review of the trial court's award of attorney fees pursuant to Indiana Code section 34-52-1-1 proceeds in three steps. We first review the trial court's findings under a clearly erroneous standard. *Id*. In reviewing the findings of fact, we neither reweigh the evidence nor judge witness credibility, but rather we review only the evidence and reasonable inferences drawn therefrom that support the trial court's findings and decision. *Id*. In reviewing under the clearly erroneous standard, we will not reverse unless we are left with a definite and firm conviction that a mistake has been made. *Id*. The second step is to review *de novo* the trial court's legal conclusions. *Id*. And finally,

the third step of our appellate review is "to review the trial court's decision to award fees and the amount thereof under an abuse of discretion standard." *Smyth*, 901 N.E.2d at 33. Here, the trial court denied Appellants' request for attorney fees.

With these principles in mind, we now turn to Appellants' arguments.

### 1. *Bad Faith*

Focusing on the Indiana trial rules pertaining to the discovery of evidence, Appellants assert that Gibson litigated in bad faith by failing to update his discovery responses after he obtained the Michigan Real Estate through his full credit bid at the sheriff's sale. In response, Gibson mainly argues that he disclosed the judgment obtained in Michigan by filing a supplemental declaration before the trial court entered its foreclosure judgment on November 21, 2007. In any event, he asserts that pursuant to Indiana Trial Rule 26(E)(3), his duty to supplement ceased upon entry of the foreclosure judgment.

Bad faith, for the purpose of an award of attorney fees, implies the conscious doing of a wrong because of a dishonest purpose or moral obliquity. *Gaw v. Gaw*, 822 N.E.2d 188, 192 (Ind. Ct. App. 2005). In *St. Joseph College, et al. v. Morrison, Inc.*, 302 N.E.2d 865, 871 (Ind. Ct. App. 1973), we stated that in order to constitute bad faith under the statute, the conduct must be "vexatious and oppressive in the extreme." The reason for such a strict standard is that the nature of an attorney fee award under the bad faith exception is punitive and designed to reimburse a prevailing party who has been dragged into baseless litigation and thereby subjected to great expense. *Cox v. Ubik*, 424 N.E.2d

127, 129 (Ind. Ct. App. 1981) (citing *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973)).

Referencing the record, Appellants allege that Gibson "wrongfully concealed" dispositive facts from them. (Appellants' Br. p. 22). In their request for production of documents, which was served on Gibson in 2005, Appellants asked for the disclosure of "[a]ll documents evidencing any attempts by [Gibson] to enforce the obligations created by the terms of the [promissory n]ote and /or mortgage[.]" (Appellants' App. p. 164). At the time of the request, Gibson disclosed the appropriate documentation. Thereafter, on November 5, 2007, when Gibson requested his foreclosure judgment on the Indiana Real Estate, he additionally filed a supplemental declaration, noting, in pertinent part:

> 4. I have been pursuing a foreclosure action in Oscoda County, Michigan, and I have obtained a judgment against [Nowak] on the mortgage. However, I have also learned that the property was titled not only in [Nowak's] name, but also in his ex-wife's name. I am pursuing additional proceedings related to that issue.
>
> 5. More recently, I have learned that the cabin was not built in the property that was described in the Oscoda County Mortgage. It was mistakenly built on the adjoining neighbor's property.
>
> 6. Although I do have the mortgage on property in Michigan, there are numerous complicating issues that make recovery from the Michigan property speculative at best.

(Appellant's App. pp. 51-52). Although he had already obtained a foreclosure judgment in the amount of $305,722.48 on the Michigan Real Estate on May 14, 2007 and made a full credit bid at the sheriff's auction—which fully satisfied the judgment pursuant to Michigan and Indiana law—on July 27, 2007, Gibson failed to disclose any of these proceedings to the trial court or Appellants. Rather, he merely mentioned that he had

obtained a judgment against the mortgage. Most notably, Gibson neglected to mention that a sheriff's sale had taken place, that he was the successful purchaser, and that he had received the sheriff's deed on the Michigan Real Estate.

Moreover, Appellants draw our attention to two misstatements in the supplemental declaration. First, Appellants assert that Gibson's testimonial that recovery was "speculative" is false as he had already recovered on the judgment by making a full credit bid on July 27, 2007. Second, Appellants contend that Gibson's statement included in his brief accompanying the declaration and noting that he had been prevented from executing on his judgment in Michigan was also false as he had completed execution on his judgment via the sheriff's sale. In the same sentence, Gibson conceded that "any recovery received in the Michigan case will serve to reduce his lien amount against the property in this case." (Appellants' App. p. 48). Although he had already obtained a judgment in Michigan, he failed to credit anything.

In *SJS Refractory Co., LLC v. Empire Refractory Sales, Inc*., 952 N.E.2d 758, 771 (Ind. Ct. App. 2011), we affirmed the trial court's award of attorney fees based on bad faith because "[d]efendant's litigation strategy was to lie and cover up their conduct, and the record and the findings in this case are replete with examples of this litigation strategy." In its findings, the trial court documented "at least 24 distinct lies, misstatements and deceitful attempts to avoid admitting the truth." *Id*.

Although at first glance, Gibson's actions do not appear to reach the same level of deceit as those of the *SJS* defendant, Gibson's material omissions in his supplemental declaration perpetuated the furtive design and resonated throughout the proceedings in

this case. During the discovery process in 2005, Appellants had requested all documents evidencing any attempts by Gibson to enforce the obligations created by the terms of the promissory note or underlying mortgage. His response at the time was appropriate. However, pursuant to Indiana Trial Rule 26(E)(2)(a), Gibson was under a duty to seasonably amend his original answer to Appellants' discovery request.

Two years later, on the same day Gibson requested a foreclosure judgment on the Indiana Real Estate, Gibson alerted the court under oath that although he had received a judgment against the mortgage in Michigan, numerous complicating issues made recovery speculative at best. Nevertheless, even though the Michigan judgment pertained to an attempt to enforce the obligations of the underlying mortgage, Gibson never supplemented his discovery. More importantly, Gibson failed to disclose that a sheriff's sale had taken place where he had submitted a full credit bid.

The entry of the Michigan foreclosure judgment occurred approximately six months prior to Gibson's request for his Indiana foreclosure judgment and his filing of a supplemental declaration; the sheriff's sale of the Michigan Real Estate took place approximately four months prior to Gibson's request. Even if Gibson believed that his bid had no effect on the proceedings in Indiana, as he now argues, his compliance with the discovery rules would have given Appellants an opportunity to raise the issue for themselves. Gibson failed to do so.

Michigan and Indiana law are unequivocal that the payment of a bid at a sheriff's sale sufficient to satisfy the judgment extinguishes the judgment. *See Bank of Three Oaks*, 444 N.W.2d at 219; *Titan Loan Investment Fund, L.P.*, 891 N.E.2d 76. Even

though Appellants were placed on notice that proceedings in Michigan pertaining to the note and mortgage were occurring, Appellants could appropriately rely on the supplemental declaration because of Gibson's affirmance under oath.

As in *SJS*, we conclude that Gibson's withholding that a sheriff's sale had occurred where Gibson had purchased the Michigan Real Estate was material, deceptive, and based on bad faith. If a full disclosure of the Michigan proceedings had occurred, the proceedings pertaining to the Indiana Real Estate could have reasonably finalized shortly thereafter. Instead, Appellants were deprived of the opportunity to avoid litigation and became embroiled in potentially unnecessary proceedings before this court and our supreme court. Accordingly, by blatantly ignoring the discovery rules in 2007 and continuing to engage in questionable litigation tactics, Gibson overstepped the boundaries of zealous advocacy and entered the realm of vexatious litigation. We reverse the trial court's denial of attorney fees and remand to the trial court with instruction to award Appellants reasonable attorney fees in litigating this action since August 8, 2007, the date of the sheriff's sale.[7]

CONCLUSION

Based on the foregoing, we conclude that the proceedings pertaining to the Indiana Real Estate became fully satisfied when Gibson obtained a foreclosure judgment on the Michigan Real Estate and submitted a full credit bid based on the same promissory note that was the basis of the Indiana foreclosure proceedings. In addition, we find that

---

[7] Because we award Appellants attorney fees based on Gibson's bad faith in litigating this cause, we do not need address Appellants' contention that Gibson continued to litigate a groundless claim.

Appellants established bad faith pursuant to I.C. § 34-52-1-1 when Gibson failed to disclose the Michigan foreclosure judgment and sheriff's sale. Therefore, we remand to the trial court for determination of reasonable attorney fees in favor of Appellants.

Reversed and remanded for further proceedings.

FRIEDLANDER, J. and MATHIAS, J. concur